WILLIAM DEERING & CO. *vs.* R. R. RUSSELL, *et al.*

Opinion filed November 29th, 1895.

**Parole Evidence Inadmissable to Vary Written Contract.**

Before parole evidence can be admitted to contradict the terms of a written contract, on the ground of mistake, it must clearly appear that such mistake was mutual. Hence, when the testimony of a witness showed that he had talked but with one paaty to the contract, it was not error to refuse to let him state his understanding of what the contract between the parties was, for the purpose of establishing a mistake in the written contract.

**Parole Statements of Agent Made Prior to Execution of Contract and not in Writing—Nonenforceable.**

A. and L. guaranteed the due performance of and compliance with all the terms of the contract whereby R. was appointed agent for W. D. & Co., a corporation, on the part of R. as such agent. A general agent acted for the corporation in making the contract. The guaranty contract was on the same sheet with the agency contract. The agency contract stated on its face that W. D. & Co. would not be bound thereby until the contract was accepted and approved at the home office in Chicago. *Held*, that A. and L. could not enforce, as against W. D. & Co., certain prior parole statements of the general agent, not incorporated in the written contract which was subsequently approved by the corporation.

**Modification.**

*Held*, further, that when the guaranty contract recited that the liability of the guarantors could not be modified or canceled, except in the manner therein specified, A. and L. could not insist upon a modification of such liability on other and excluded grounds.

**Guarantors Ignorance of Contemporaneous Parole Contract.**

*Held*, further, that while the agent, R., agreed by parol with the general agent that his commissions for handling a certain article should be used to reduce his prior indebtedness to W. D. & Co., W. D. & Co. was under no duty to impart this agreement to the guarantors, and their ignorance of it furnished no defense to an action on the contract of guaranty.

**Guarantors not Entitled to Credit for Pledged Collaterals Securing Defalcation.**

R. defaulted largely in complying with the terms of his agency contract, and turned over to W. D. & Co. an amount of notes and accounts as collateral to his indebtedness under the contract. *Held*, that W. D. & Co. was not obliged to exhaust the collaterals before proceeding against the guarantors, nor were they (the guarantors) entitled to be credited with the value of such collaterals.

Appeal from District Court, Ransom County; *Lauder*, J.

Action by William Deering & Co., a corporation, against R. R. Russell and others. Judgment for plaintiff, and defendants Aylen and Labbitt appeal.

Affirmed.

*Mitchell & Gram* and *Edward Engerud*, for appellants.

*John E. Greene*, for respondent.

BARTHOLOMEW, J. The plaintiff is a corporation engaged in manufacturing and selling machinery and supplies, with its home office at Chicago, Ill. In 1893 the defendant Russell was the agent for plaintiff at Sheldon and Enderlin, in this state. The other defendants were guarantors of the due fulfillment of the agency contract. On the settlement of the business for that year between the principal and agent, it was found that Russell had received property belonging to plaintiff, amounting to $2,325.64, for which he had not accounted. A large part of the deficiency was on twine account. This action was brought on the written guaranty to recover the deficiency. Russell was not served, and does not defend. The defendants Aylen and Labbitt answer jointly. There was a trial to a jury. Verdict directed for plaintiff. Judgment on the verdict, and defendants appeal from the judgment on alleged errors of law occurring at the trial, and duly excepted to.

The uncontradicted testimony shows that on February 16, 1893, two contracts were executed between respondent and Russell. One Stanton, who was a general agent for respondent, residing at Fargo, acted for the respondent in the transaction. One of these contracts appointed Russell agent for the respondent for the sale of twine alone, and specified in detail the manner in which that article should be sold, and at what prices, and the consideration that the agent should receive for selling the same. The other contract was more comprehensive. By its terms, Russell was appointed as agent for the respondent for the sale of "its harvesters, binders, reapers, mowers, twine, extra parts, trucks, bundle carriers, flax carriers, and other attachments, on commission." Defendant

Russell took this contract away for the purpose of getting the guaranty contract, which was printed either at the bottom or on the back of the same sheet, signed by the other defendants. It was so signed and returned, but the machine contract was mutilated in some manner, and another contract was drawn, identical in its terms, but dated February 23, 1893, and the guaranty contract thereon was also signed by the defendants and appellants. It is upon this contract that this action is brought. It is in the following language: "In consideration of the appointment or retention of above party as agent of William Deering & Co. for the sale of its harvesters, binders, reapers, mowers, trucks, extras, twine and other property, in certain territory, the undersigned jointly and severally guaranty the fulfillment by said agent of all his obligations and duties growing out of and relating to such agency, or otherwise, that now or hereafter may exist, and we agree to pay said William Deering & Co., or its successors, all damages it or they may sustain by reason of any default of said agent; that the written acknowledgment of, or a judgment of any court against, said agent, shall in every respect bind and be conclusive against the undersigned, their heirs and representatives: and that the liability hereby created shall not be waived, modified, or canceled by any extension of time to pay or keep any part of said obligations or duties, or otherwise, nor except by surrender to us of this guaranty and agreement, or by indorsement hereon by William Deering & Co. at their home office in Chicago. Witness our hands and seals February 25th, A. D. 1893. R. R. Russell. Jas. P. Aylen. [Seal.] Henry F. Labbitt. [Seal.] P. O. Sheldon, No. Dak." At the end of the agency contract, and preceding the contract of guaranty, were these words: "This contract is not binding upon William Deering & Co. until accepted by it at Chicago, Illinois." The copy of the contract set out in the pleadings, and which is not questioned, shows immediately after the above these words: "Accepted and approved at Chicago, Ill., this 14th day of April, 1893. [Signed] William Deering & Co., by A. H. Upton."

The defendants and appellants seek to avoid liability upon several grounds. They admit the making of the contracts on the part of Russell, as above set forth, except that they claim that the twine contract was entered into after the making of the machinery contract, and after they had signed the guaranty contract. They allege and here claim that the word "twine," which was in the printed form of contract used, was left in the machinery contract and in the guaranty contract inadvertently and unintentionally; that in fact the parties to said contract did not intend that the machinery contract or the guaranty contract should cover the article of twine; that appellants signed said guaranty contract on the representations of the respondent and Russell that the same did not cover the article of twine. They also allege payment in full. And as a further defense they allege that, when the twine contract for 1893 was made, Russell was largely indebted to respondent upon the prior contract of the firm of which he had been a member, for handling twine for respondent in the year 1892, and that it was secretly agreed between respondent and Russell that his compensation for handling twine in 1893 should be applied upon his pre-existing indebtedness to respondent; that such understanding was fraudulently concealed from them, and if they had known it they would not have signed said guaranty. Whether the separate twine contract was executed contemporaneously with or subsequent to the machinery contract is not, perhaps, very material. Still, if it be to appellants' detriment to hold that the twine contract and the original machinery contract, dated February 16, 1893, and which was mutilated and destroyed, were executed on the same date, and as a part of the same transaction, they cannot be heard to complain of such holding. Mr. Stanton, as a witness for appellants, testified: "Both contracts were entered into the same day. The bargain was all made the same day as far as that goes. There was another contract executed for the twine, supplementary to the machinery contract, and part of it. * * * The twine contract and the machine contract that was mutilated were

executed the same day, and this other contract, in which twine is mentioned, was afterwards." There was no claim of surprise, and no effort made to show that the witness was mistaken. But if this guaranty is a valid, binding contract upon appellants, the time of the execution of the separate twine contract is immaterial, because it is admitted that "twine" was included both in the machinery contract, to which the guaranty contract was appended, and in the guaranty contract itself, and such contract reads: "The undersigned jointly and severally guaranty the fulfillment by said agent of all his obligations and duties growing out of or relating to such agency, or otherwise, that now or hereafter may exist."

We next inquire, then, whether or not this guaranty does legally include the agent's liability for twine handled. Appellants allege a mutual mistake of the parties in leaving the word "twine" in the machinery contract and the guaranty contract, and they also allege that plaintiff and Russell, in order to obtain their signatures to such guaranty, represented to and agreed with them that the agency should not embrace the article of twine. We have examined the evidence carefully, and there is no suggestion anywhere that either of the appellants ever had any conversation or communication with respondent, or with any. agent of respondent, relative to Mr. Russell's contracts, until long after this guaranty was signed. Each of the appellants testified that he had some conversation with Russell about the matter, and then each in turn was asked for his understanding of what the contract included. The answers were excluded, and on the plainest possible principles. They could not hold plaintiff to any understanding that they obtained from Russell alone. They had established no such mutual mistake as would permit them to contradict the written instruments by parole evidence. It is true that Russell swears that his understanding with Stanton was that the machinery contract should not include twine. It nowhere appears that this was ever communicated to appellants, but it would not avail, in any event. When the guaranty contract was

signed, appellants knew that respondents was not then bound. They knew that Stanton had no power to bind repondent. The contract on its face stated, "This contract is not binding upon William Deering & Co., until accepted by it at Chicago, Illinois." Appellants knew that the contract to be accepted at Chicago was the written and printed instrument, and not the understandings of Stanton and Russell. So knowing, they permitted their guaranty contract, which in terms made them liable for the agent's default on twine account as much as upon any other account, to be forwarded for acceptance. And they knew, or were bound to know, that it included twine. True, they swear they did not read it carefully, and did not know that it included twine. But they were amply competent to read it, and they were not induced to refrain from reading it by anything that was said or done by respondent, or any agent of respondent; and, respondent having accepted the contract and acted upon it, appellants cannot be heard to say that they did not know what was in the contract. Furthermore, they now seek to modify their liability in a manner expressly excluded and repudiated in their own contract. The guaranty contract which they signed says: "And that the liability hereby created shall not be waived, modified, or canceled by any extension of time to pay or keep any part of said obligations or duties, or otherwise; nor except by surrender to us of this agreement, or by indorsement hereon by William Deering & Co., at their home office in Chicago." Appellants now seek to limit and modify that liability by a parole understanding on the part of the general agent Stanton. The trial court was clearly right in refusing to permit any such modification.

Mr. Russell testified that by arrangement with Stanton his compensation for handling twine in 1893 was to be used to reduce his existing indebtedness to respondents. Appellant's counsel offered to show by each of the appellants that they did not know of this former indebtedness, and did not know of any arrangement by which Russell's compensation was to be used to reduce such indebtedness. The offer was refused, and this refusal is

urged as error. We cannot so regard it. We know of no duty resting upon respondent to find out who these guarantors were to be, and impart that information to them. There is no pretense that they ever asked for it. It was a matter resting entirely between Russell and his guarantors. If Russell's financial circumstances would have influenced them in this matter, it was their duty to inform themselves thereof. It is claimed that Russell received no compensation for handling twine, and therefore it decreased his ability to meet his obligations under his contract. This is not correct. He had the full benefit of his commissions, as fully as if paid to him in cash. If paid in cash, he might the next moment have paid the money back to apply on the indebtedness. The result would have been the same. But how could appellants be prejudiced? Russell might have agreed to apply his twine commission to the payment of any other indebtedness, but such fact would furnish no ground of complaint to appellants, and yet the effect would be the same as that of the contract of which they here seek to complain. The offered proof constituted no defense, and the court was clearly right in excluding it.

The defense of payment remains yet to be considered. The evidence showed that Russell had turned over to respondent notes and accounts, as collateral to his indebtedness, amounting to nearly $2,000. It is urged that respondent was bound to show, as against these guarantors, that such collaterals had not been paid. We will assume that this position is correct. The general agent, Stanton, identified the sheet showing the balance due on settlement with Russell in September, 1893, and testified that nothing further was paid on said indebtedness during the continuance of his agency. He was, however, superseded by one Stavely, in March, 1894. Mr. Stavely testified that there had been paid on the collaterals during his agency the sum of $165.33, exclusive of costs of collection and no more. On cross-examination this witness testified that he gained his information of the fact that plaintiff had these collaterals from the books of the plaintiff, and from a list of notes signed by Russell, showing that they were

taken as collateral at that time. Defendants thereupon moved the court to strike out the testimony of the witness in regard to the collaterals, as not being the best evidence. This was refused. It will be noticed that at that time the witness had gone no further than to testify that his knowledge that the notes and accounts were held as collateral was obtained from the books and the list signed by Russell. Undoubtedly there were more primary sources of evidence that the notes and accounts were held as collateral. But it was to defendants' interest to show that they were so held, as they subsequently did show by the witness Russell. So, if the ruling was error, it was without prejudice to appellants. At the time the motion to strike out was made, the witness Stavely had not testified that his knowledge as to accounts paid on the collaterals was obtained from the books. True, he did so testify subsequently; but the evidence was received without objection, nor was there any motion to strike it, or any effort to show that it was not correct.

It is urged that the guarantors must be credited with the value of such securities, and are only liable to respondent for the balance then remaining. This is not the law. Under our statute (Comp. Laws, § 4412,) the party holding evidence of indebtedness of this character in pledge as collateral security cannot sell the same, but must proceed to collect it, if he wishes to realize thereon. Hence there would be no means of determining the value, except at the end of an execution in each case. But it is well settled that a creditor whose claim is guaranteed and also secured need not proceed against the security, but may at once sue the guarantors, on default of the principal. *Penny* v. *Manufacturing Co.*, 80 Ill. 244; *Sigourney* v. *Wetherell*, 6 Metc. (Mass.) 553; *Forbes* v. *Rowe*, 48 Conn. 413; *Bingham* v. *Mears*, 4 N. D. 437, 61 N. W. 808. On payment of the debt the guarantors will, of course, be subrogated to all the rights of the creditor on the securities.

We find no error in this case, and the judgment is affirmed. All concur.