HOME SAVINGS BANK, APPELLANT, V. A. C. SHALLEN-BERGER, APPELLEE.

FILED APRIL 3, 1914. No. 17,585.

1. **Guaranty: NOTE.** A guaranty in the following form: "I hereby waive protest and guarantee payment of a note of $830.05 of date Dec. 16, '02, due June 14, 1903, signed by W. P. Summers in favor of Shelly-Rogers Co. Signed this 30th day of Dec., 1902. A. C. Shallenberger." *Held* to be an absolute contract that the money expressed in the note should be paid at the maturity thereof at all events. *Bloom & Co. v. Warder, Mitchell & Co.,* 13 Neb. 476.

2. ———: **CONSIDERATION.** "The extension of time of payment to a principal debtor is a sufficient consideration to support a new

95 Neb. 38

contract of guaranty made after the date of the renewal of such obligation, especially when the guarantor at the time of making such guaranty is still liable as guarantor for the payment of the debt renewed." *Home Savings Bank v. Shallenberger*, 82 Neb. 507.

3. ———: NOTE: RIGHT OF ACTION. Where, in such case, the promissory note, the payment of which was thus guaranteed, was conditionally transferred to plaintiff, the condition being that the defendant should renew the guaranty upon such note, and the new guaranty was executed and transmitted to the payee of the note, who, upon its receipt, delivered it to plaintiff, the purchaser of the note, the plaintiff would be entitled to maintain an action thereon the same as if the guarantor had personally delivered the guaranty to him.

4. Appeal: VARIANCE. Where, at the time of the commencement of the action upon the guaranty, the promissory note, the payment of which was guaranteed, and the guaranty were in the possession of defendant, and the plaintiff in his petition so alleged and set out an incorrect copy of the guaranty, alleging that it was substantially a correct one, and the defendant in his answer set out and attached thereto the original guaranty, and the cause was thereafter tried upon the corrected guaranty, no objection that the allegation of the petition and proof did not agree can be considered on appeal.

5. Guaranty: NOTE: ASSIGNMENT: NOTICE OF DEFAULT. Where an absolute, unconditional, general guaranty of the payment of a promissory note is executed upon sufficient consideration, such guaranty goes with the note without assignment to any one to whom such note may be transferred, and notice of default in the payment thereof by the maker is not essential to hold the guarantor, nor is the holder bound to protect the security—such as a chattel mortgage—for the benefit of the guarantor.

6. Guaranty: APPEAL: REFUSAL OF INSTRUCTION. An instruction to the jury, copied in the opinion, requested by plaintiff, the giving of which was refused by the court, *held* to state the law applicable to the case on trial, and that the refusal to give it was reversible error.

APPEAL from the district court for Harlan county: HARRY S. DUNGAN, JUDGE. *Reversed*.

*W. S. Morlan,* for appellant.

*J. G. Thompson* and *John Everson, contra.*

REESE, C. J.

This case is before this court the second time. Upon the former trial judgment went in favor of defendant, from which plaintiff appealed. The judgment was reversed and the cause remanded. The opinion was written by the late Commissioner Calkins, and is reported in 82 Neb. 507. Upon a retrial of the cause, the verdict and judgment were again in favor of defendant, and plaintiff has again appealed.

In addition to the facts set out in the former opinion, it appears that the inception of this indebtedness was a promissory note and mortgage made by W. P. Summers to defendant for the purchase price of a number of cattle sold by defendant and a Mr. Snyder to Summers; the cattle having been purchased from the Shelly-Rogers Company, a commission firm in South Omaha. The note was indorsed by defendant and transferred to Shelly-Rogers Company. There seems to be no question but that defendant was liable upon his indorsement of the note. Shelly-Rogers Company held the note until its maturity, when it was renewed; the indorsement being perpetuated by defendant during a number of renewals. The renewals were made to the Shelly-Rogers Company, and the chattel mortgage was renewed at each renewal of the note. The last renewal note was sold and transferred to plaintiff, but apparently upon the condition that defendant would guarantee the payment thereof, as he had done on previous occasions with the notes of which the one in suit is a renewal. After the sale and delivery of the note in suit to plaintiff, Shelly-Rogers Company wrote defendant, who was then in Washington city as a member of congress, saying, in substance, that Summers desired an extension of time upon his note, giving him a list of the property secured by the mortgage, and inclosing a guaranty of the payment of the note, which defendant signed and returned to Shelly-Rogers Company, who delivered it to plaintiff and was by the latter attached to the note. After the maturity of the note, and upon the expiration of 30 days thereafter, whereby under the law of Colorado where the cattle were situated the mortgage

lien was lost, a creditor of Summers caused a writ of attachment to be levied upon the mortgaged property, and the security was then defeated. The guaranty was executed December 30, 1902, as follows: "I hereby waive protest and guarantee payment of a note of $830.05 of date Dec. 16, '02, due June 14, 1903, signed by W. P. Summers in favor of Shelly-Rogers Co. Signed this 30th day of Dec., 1902. A. C. Shallenberger." On the 9th of June, 1903, plaintiff wrote defendant as follows: "We hold note and mortgage for $873.17, due June 14th, given by William P. Summers, of Lamar, Neb., and guaranteed by you. Mr. Summers wants an extension of time until fall, and we want to clean up the deal when due. If you will send us draft for the amount when due will send you all the papers in this case. * * * F. McGiverin, Prest." On the 12th of the same month defendant wrote plaintiff acknowledging the receipt of the foregoing letter, and saying: "I feel the same as you do about this. I want it paid and have so written Summers. I have a brother in Imperial, same county as Lamar, cashier of Farmers & Merchants Bank of Imperial, and have written him to go after the matter and either collect the money and remit to you or see that the cattle are shipped to market and the proceeds paid to you. I prefer to have the collection come from you. I have stood behind this for some time and unless you will carry it I don't want to take it up personally until we have realized on the security. As soon as I can hear from O. P. Shallenberger of Imperial I will write you just what Summers will do. * * * A. C. Shallenberger." On the 26th of the same month plaintiff wrote defendant; "I have heard nothing from Wm. P. Summers, of Lamar, Neb., since I wrote you. There was due on this note, June 14th, $873.17, with int. at ten per cent. after maturity. I think you better take up this paper now. Mr. Summers had June 7th, 26 cows, 8 2-year-old heifers, 20 calves. Enough to pay most of this. His cattle are over in Colorado, where a mortgage is only good 30 days after due. If you will send me a check for the amount due I will send you the note and mortgage. * * * F. McGiverin, Prest." On July 13

McGiverin again wrote defendant: "Yours of July 1st duly received. Up to this date I have not heard from Mr. Summers. Please stir this matter up and oblige. * * * F. McGiverin, Prest." (The letter of July 1 is not found in the record.) On July 18 defendant wrote plaintiff: "I inclose draft for $559.75 to pay note of Jos. Porter in like amount due May Bros., at their request. Also draft $881.47 to pay note of Wm. Summers due June 14, '03 and int. to date. Please send both of these notes to me uncanceled, together with mortgages. * * * A. C. Shallenberger." On July 20 defendant wrote plaintiff acknowleging the receipt of the Summers note and mortgage for $830 and interest, saying they were not assigned to him, that the indorsement of Shelly-Rogers Company was erased, and that he held them subject to plaintiff's order; that since mailing the letter containing the draft he had learned that the cattle described in the mortgage had been seized under attachment proceedings; that "although W. P. Summers immediately notified you of the fact you made no move to protect me, nor did you notify me so I could protect myself, and that you allowed the 30 days to expire after the maturity of your mortgage without attempting to protect me against McPherin, although you knew under the Colorado law this would invalidate the mortgage as against the claims of a third party, and you have allowed the security to be lost under this mortgage, although you had full time and notice to protect me and did not do so;" that he had notified his correspondent bank to refuse payment of the draft. (We have referred to this correspondence as between plaintiff and defendant, but, as a matter of fact, it was between defendant and the Commercial National Bank of Fremont holding the note for collection, but of which McGiverin was president as well as of plaintiff bank.) The note, defendant's guaranty, and the mortgage, were not returned to the bank, but remained in the possession of defendant.

In the petition the guaranty is quoted: "I hereby waive protest and guarantee the payment of a note of $873.17 of date December 16, 1902. due June 14, 1903, signed by Wm.

P. Summers, in favor of Shelly-Rogers Co. Signed this 16th day of December, 1902." It is alleged in the petition that "said original written guaranty is now in the possession of the defendant, who obtained the same as hereinafter stated, and the foregoing copy may vary slightly, in immaterial form, from the literal wording thereof, but is in all material respects, substances and effect the same;" thus evidently referring to the guaranty upon a note of which the one in suit is a renewal. Defendant answered the petition, setting out the guaranty showing that it was dated December 30, 1902, and described the note as dated December 16, 1902, and for the true amount of $830.05. From that time on the guaranty was treated as for $830.05, the true amount. *Home Savings Bank v. Shallenberger*, 82 Neb. 507. Plaintiff might properly have amended its petition correcting the error, but this was not done. It is now insisted that the well-known rule, that "the allegations and the proof * * * must agree," should be applied, and a number of authorities are cited sustaining the doctrine. The rule is not here questioned, but its application to the case in hand may be seriously doubted. The whole record abounds with proof that the contest was based upon the guaranty attached to defendant's answer, and whatever prejudice might otherwise have resulted from the error in the tentative copy set out in the petition was obviated, and the case was tried upon its true merits in so far as the copy of the guaranty was concerned.

The first answer filed by defendant consisted solely of a general denial. The second, or amended, answer also contained a general denial of unadmitted averments, with the admission of the execution of the promissory note for $830.05, the execution of guaranty for the same amount, the correction of dates and the exhibit of the true copy, as above stated; alleges that the guaranty was not attached to the note, but was on a separate paper not accompanied by the note; that the guaranty was nonnegotiable; that at the time of its execution the Shelly-Rogers Company was not the owner nor holder of the note; that the note was secured by a chattel mortgage held by the Shelly-

Rogers Company, as defendant supposed; that the company had agreed with defendant to keep the note well secured by a chattel mortgage, upon which defendant relied, but failed to keep its agreement; that the guaranty was without consideration; that, before the execution and delivery of the guaranty to Shelly-Rogers Company, that company had sold and transferred the note to plaintiff, which was unknown to defendant, and, had it been known to defendant, he would not have signed the guaranty, and that at the time of the commencement of this suit the note and guaranty were in the possession of plaintiff's attorney, but was later returned to defendant's counsel.

A second amended answer was filed pleading the facts contained in the previous pleading more in detail, alleging fraud and breach of contract on the part of Shelly-Rogers Company, who in obtaining the guaranty was acting as the agent of plaintiff; that plaintiff failed and neglected to comply with the argeement by the Shelly-Rogers Company, and by its laches and carelessness the chattel security was lost by the appropriation thereof by others after the expiration of the mortgage lien; that subsequent to the 16th day of December, 1902, there was no liability on the part of defendant, and therefore there was no consideration for the guaranty; that immediately after the appropriation of the mortgaged property by the attachment plaintiff, in a suit brought against Summers, plaintiff was notified of the fact by Summers, but no steps were taken to protect its rights or the rights of defendant, and by plaintiff's negligence the mortgage lien was lost.

The reply contained a general denial of the averments of this answer, as well as some affirmative allegations which it is not deemed necessary to notice here. There was a jury trial, resulting in a verdict in favor of defendant, upon which judgment of dismissal of the action was entered.

At the outset, it might be well to notice the holding of this court upon the former appeal of this case, and in which some of the principal facts are stated. It is held that, as defendant was liable on his former guaranty at the time

the guaranty sued on was signed and delivered, the question of want of consideration cannot arise; that, as between plaintiff and the Shelly-Rogers Company, the plaintiff would have had the right to cancel the transaction (of the purchase of the note) in case the latter had failed to procure defendant's guaranty; and that the fact of the cancelation of the indorsement of the Shelly-Rogers Company before the note was returned to defendant could not be urged by him as a defense to this action, he being primarily liable.

An examination of the terms of the guaranty shows that it is an absolute unconditional, general guaranty of the payment of the note. It is described by a recital of the correct amount, its date, by whom signed, and in whose favor drawn. The question of its negotiability is not important nor material. It is not made in favor of any person. It therefore follows and goes with the note wherever it may go, or to whom it may be transferred. 20 Cyc. 1432. In an absolute guaranty of payment, notice of default is not necessary. *Bloom & Co. v. Warder, Mitchell & Co.*, 13 Neb. 476.

"Guaranties of performance and payment are absolute and not collateral. Unlike the contract of an indorser, there is no condition as to demand and notice of default annexed to a contract of guaranty of payment or of performance. Such a guaranty is an absolute promise that the principal will perform in accordance with the provisions of his contract. It is the business of the guarantor to inform himself as to the conduct of the principal. There is some conflict as to this doctrine, but it is the true rule, because the guarantor makes an absolute promise that a particular thing shall be done, and thereby assumes an active, absolute duty to see that it is done, and must, at his peril, perform the promise. And while the guarantee, from his situation, possesses better means of knowing of the default of the principal than the guarantor, yet the latter has ample means of knowing the facts, and must inform himself and not rely upon the guarantee, who owes no duty to the guarantor except to act in the utmost good faith,

and not be guilty of laches to the guarantor's injury." Pingrey, Suretyship and Guaranty (2d ed.) sec. 348.

"A general guaranty is assignable with the obligation secured thereby, and it goes with the principal obligation, and is enforceable by the same persons who can enforce the obligation. The rule is, as to general guaranty, that the transfer of a note carries with it all security, even if there is no formal assignment or delivery, or mention of the guaranty. This rule is so because a general guaranty is one open for acceptance by the whole world." Pingrey, Suretyship and Guaranty (2d ed.) sec. 357. See, also, Spencer, Suretyship, secs. 105, 106.

It cannot be doubted that at the time of the execution of this guaranty defendant was liable on a former guaranty of a note of which this one and the guaranty are renewals. The evidence shows that the former note and guaranty were not surrendered and relinquished to Summers, if at all, until after the receipt of the new guaranty by plaintiff. The note to which the guaranty referred matured on the 14th day of June, 1903. By the law of Colorado, a chattel mortgage lien holds good only until the expiration of 30 days after the maturity of the note, which would be July 14, 1903. On the 26th day of June, 1903, the Commercial National Bank of Fremont (then holding the note and guaranty for collection) notified defendant by the letter, hereinabove set out, of this provision of the Colorado law, saying "a mortgage is only good 30 days after due," thus giving defendant some 14 days' time in which to take care of the security. Even if it had been plaintiff's duty to give any notice to defendant in order that he might protect himself, the notice was given. It therefore seems evident that defendant was mistaken in his letter of July 20, 1903, in saying, "nor did you notify me so I could protect myself," etc. The time for action in preserving the mortgage lien was before the expiration of the 30 days. After that time there was nothing to "protect." The lien was lost. The charge of fraud committed by the Shelly-Rogers Company was not sustained, and it is unnecessary to inquire what effect proof of fraud on its part would have

upon the rights of plaintiff. As we view the law as applicable to this case, we are persuaded that none of the affirmative allegations of the answer present a defense to plaintiff's demand.

On the trial plaintiff requested the court to give instruction numbered 6 of instructions so requested, but which the court refused to give, and to the refusal plaintiff duly excepted, and now assigns the action of the court as error. The instruction is as follows: "The court instructs the jury, under the terms of guaranty set out in plaintiff's petition, the plaintiff was not required by law to first endeavor to collect the note guaranteed by the defendant when due from W. P. Summers, the maker thereof, and the plaintiff was not required by law to endeavor to collect the amount of said note from the chattel property mortgaged to secure the same. The said guaranty is what is known in law as an absolute guaranty, and any failure on the part of the plaintiff to attempt to collect the note so guaranteed from said Summers, or any negligence or failure on the part of the plaintiff to follow up and take the property mortgaged to secure the same, is no defense in this action, and in arriving at your verdict in this case you will entirely disregard any evidence tending to show a failure on the part of the plaintiff to attempt to collect said note from said Summers or out of said mortgaged property." As we have heretofore seen, this instruction states the law, and it should have been given. No instruction given is of similar import, and the refusal to give it constitutes reversible error.

The action of the court in giving instructions on its own motion, as well as the refusal to give other of plaintiff's instructions refused, is presented for review, but it is not deemed necessary to notice them further.

For the error in refusing to give the instruction above quoted, the judgment of the district court is reversed and the cause is remanded to that court for further proceedings.

Reversed.

Letton, Fawcett and Hamer, JJ., not sitting.