(No. 4799. May 29, 1928.)

MARSHALL-WELLS COMPANY, a Corporation, Respondent, v. S. E. KRAMLICH, JOHN D. ISAAK and J. P. MEHLHAFF, Appellants.

[267 Pac. 611.]

Martin & Martin, for Appellants.

358

Paul Pizey and Delana & Delana, for Respondent.

ADAIR, Commissioner.—This suit was instituted against appellants for judgment on a written guaranty signed by

said parties, given to secure credit for Leader Hardware Company, Ltd., a local concern. From a judgment based upon the verdict of a jury, this appeal was taken after a motion for a new trial had been denied. The assignments of error, with their various subdivisions, present fifty sundry and specifically alleged grounds for reversal of the judgment. For the purposes of this opinion, these will be grouped and treated together, where this can be done intelligently, rather than to consider each in seriation.

The respondent, a New Jersey corporation with its principal place of business at Duluth, Minnesota, was engaged in an interstate wholesale business, selling hardware and other merchandise to retail merchants. It was originally incorporated under the name of Marshall-Wells Hardware Company, but the name was later changed to Marshall-Wells Company. This company had not complied with the laws of Idaho relative to foreign corporations doing business within the state. It appears that about December, 1909, appellants Kramlich, Isaak and another opened a retail store at American Falls, said persons operating as a copartnership under the firm name of "Leader Hardware Co., Ltd." This firm purchased goods from time to time, and obtained extensive credit from respondent. Later, the appellant Mehlhaff became interested in said business as a partner. There is testimony in the record to the effect that in July, 1910, some of these parties informed a salesman of respondent that they were going to incorporate. In August, 1910, articles of incorporation were prepared, signed and acknowledged by each of these partners. These articles were filed in the office of the county recorder of Oneida county, March 3, 1911, and a certified copy thereof was filed in the office of the Secretary of State July 7, 1911. The name adopted by the corporation was identical with that formerly used by the copartnership. There is a substantial conflict in the evidence as to whether at various times on and before January 17, 1911, these appellants informed a representative of respondent that they had perfected such corporate organization,

On January 17, 1911, this concern was indebted to respondent for merchandise and commodities sold it, in the approximate amount of $6,500, which it was unable to pay, and it desired an extension of time and further credit, which was refused by respondent unless the individuals most substantially interested would personally guarantee the indebtedness. Thereupon the following instrument was signed and delivered to respondent:

"LETTER OF CREDIT.

"Marshall-Wells Hardware Co.,
"Duluth, Minn.

"January 17, 1911.

"Gentlemen:

"In consideration of the sum of one dollar (1.) to me in hand paid, receipt whereof is hereby acknowledged, and the further extension of credit granted by Marshall-Wells Hardware Company to Leader Hardware Co., Ltd., I hereby unconditionally guarantee payment of Six Thousand and No/100 Dollars, the Leader Hardware Co., Ltd., shall at any time be owing to said Marshall-Wells Hardware Co. on account of goods theretofore or hereafter sold, whether said indebtedness is in the form of notes, bills or open account. This shall be an open and continuing guaranty and shall continue in force notwithstanding any change in the form of such indebtedness, or renewals or extensions granted by you, without obtaining my consent thereto, and until expressly revoked by written notice from me to you, and any such revocation shall not in any manner affect my liability as to any indebtedness contracted prior thereto. Notice of indebtedness and of default in payment are hereby waived. Liability under this guaranty shall at no one time exceed the sum of $6,000.00.

"JOHN D. ISAAK.
"S. E. KRAMLICH,
"C. GRUENEICH.
"J. P. MEHLHAFF.

"Witness:
"FRED L. CHANDLER."

The business continued for many years, various parties investing therein as stockholders, and some retiring. The respondent carried an indebtedness of this concern, and extended credit to it, at times approximating $18,000. No revocation of this letter of credit was ever made by any of said signers. The Leader Hardware Co., Ltd., as collateral security for its account, at divers times delivered to respondent many of its customer's notes, which were held by respondent for collection, with the right and authority to apply the proceeds on such indebtedness. The business did not prosper, and became financially involved to an extent exceeding $71,000. On September 12, 1922, it owed respondent the sum of $9,025.11. On that date a meeting of its creditors was held, and as a result the Leader Hardware Co., Ltd., made an unconditional assignment in writing of all its assets to a committee of such creditors. Shortly thereafter the business was closed out, the assets disposed of, and the committee paid a dividend of seven per cent to each creditor. At the time of such assignment and subsequently the respondent held as collateral security various customer's notes of the Leader Hardware Co., Ltd., aggregating from $8,000 to $9,000, from the collection of which respondent had realized, at the time of the trial of this action, only a small amount, which, added to the dividend, left a sum largely in excess of $6,000 still due it from the Leader Hardware Co., Ltd.

Appellants contend that it was orally agreed that the assignment to creditors was made on the express condition that this was to liquidate and discharge all indebtedness of the corporation to all creditors, and that as a result these guarantors were thereby released from all liability on the contract herein sued upon. There is a direct conflict in the evidence on this proposition. It is also the contention of appellants that the guaranty was intended to cover only the pre-existing indebtedness of the partnership; that the corporation was not then in existence either *de facto* or *de jure;* that such being the case, and all partnership debts having been paid before this suit was commenced, there is

no liability on their part; and that these guarantors were entitled to rely upon the statutes of limitation as to any partnership debts, since the partnership ceased to exist when the organization of the corporation was fully perfected. On the other hand, it was the contention of respondent that at the time the guaranty was signed the Leader Hardware Co., Ltd., was a *de facto* corporation, but that in any event the guarantors were now estopped to deny its corporate existence because of certain representations made by them and relied upon by respondent.

Upon these conflicting theories the case was tried and the jury rendered its verdict. From a careful examination of the voluminous record and many exhibits it is apparent that the verdict was in accord with the overwhelming weight of evidence. These appellants operated during the times above mentioned, variously as a copartnership and later as stockholders of a corporation, transacting the same business, at the same place, under the same name, and getting extensive credit at all times from respondent. They were themselves the *alter ego* of the corporation that was formed, being the principal owners of the stock, and sole managers and directors of the company. The very fact that this guaranty was insisted upon evidences the fact that respondent believed it was dealing with a corporation, since if partners, these signers were already liable as a matter of law, and the guaranty would have been a futile thing. If it was the object to guarantee only the partnership debts already contracted, as contended by appellants, the provision therein made for future credits would not have been inserted, in view of the fact that these parties actually had organized, or were then perfecting a corporation to take over and operate the business. Even though the corporation was not legally organized, there was no reason why this guaranty could not legally have been given to secure credit for it when it commenced to operate as such. The credits were actually given and, while respondents were connected with the Leader Hardware Company, they had the benefit thereof, whether as copartners or stock-

holders of the corporation. Respondent parted with valuable property to the Leader Hardware Company, and the judgment, being supported by competent evidence, should be upheld, unless prejudicial error was committed at the trial, as a result of which it satisfactorily appears that appellants were deprived of some substantial rights. It might be well to observe that in a jury trial, occupying five days and involving complicated issues of law, it would be but natural that a trial judge, however eminent and learned, would make some errors in the admission or exclusion of testimony, or elsewhere during the trial; but where, as here, the verdict is in accordance with the great preponderance of the evidence and with all principles and considerations of justice, it should not be set aside, except where a different result would likely have been obtained had such errors not occurred. To reverse a judgment on mere technicalities not affecting the substantial rights of the parties would be inimical to all rules of reason and justice.

It is contended that the court erred in overruling the demurrer to the complaint, and in denying the motion to strike certain portions thereof. It, in effect, alleges the existence of plaintiff as a foreign corporation; that about August 15, 1910, the defendants formed a corporation named Leader Hardware Co., Ltd.; that they signed the articles of incorporation and subscribed and paid for stock; that they elected officers and directors; that the defendants were such directors and officers; that immediately thereafter they conducted their business as a corporation. It alleges facts which would constitute the Leader Hardware Co., Ltd., a *de jure* corporation, save for the failure of defendants, through negligence or carelessness, to properly record their articles with the recorder of the county and Secretary of State. The complaint also alleges that defendants represented to plaintiff, first that they were going to incorporate, and later that they had completed the corporate organization, and were the stockholders and officers of the corporation, and were carrying on their business as

a corporation; that they knew at the time such representations were made that the articles had not been filed as required by law; that plaintiff did not know that fact; that the defendants intended that plaintiff should rely upon such representations, and plaintiff did rely thereon, and extended the then existing indebtedness and further credit for years thereafter upon the faith and credit of the guaranty, executed in pursuance of such representations; and that defendants were estopped to deny that the Leader Hardware Co., Ltd., was a corporation, and that because of reliance upon such false representations, plaintiff suffered irreparable injury. It is further alleged that at the time of the signing of the guaranty the corporation was indebted to plaintiff in the amount of about $6,500; that plaintiff continued to do business with the corporation until the fall of 1922, selling it merchandise in reliance upon said guaranty and representations; and that at the time suit was brought, the corporation was indebted in an amount in excess of $6,000. The complaint also alleged that the goods were so sold by plaintiff to defendants in purely interstate commerce transactions.

The principal objections urged to the complaint are that it fails to state a cause of action; that it appears therefrom that the guaranty, a copy of which was attached as an exhibit, was given to Marshall-Wells Hardware Company, while the plaintiff in the present suit is Marshall-Wells Company, without any allegation as to the change in corporate name; that two causes of action inconsistent with each other are stated, the proof of one necessarily disproving the other, because one cause of action attempted to be set forth is for fraudulent representations and deceit, which is inconsistent with the other cause of action pleaded upon the guaranty based upon the corporate existence of the Leader Hardware Co., Ltd.; that the necessary elements of estoppel are lacking; that the complaint on its face shows that respondent had reasonable means of knowing the falsity of the statements relative to the incorporation of the Leader Hardware Co., Ltd., since examination of the

public records would disclose the true situation; that the complaint does not show that the Leader Hardware Co., Ltd., was even a *de facto* corporation, and if it was not such the guaranty was void, there being no corporation *de facto* or *de jure*, the debts of which could be guaranteed. It is likewise contended that the motion to strike, which was designed to eliminate one of said alleged inconsistent causes of action, should have been sustained, and the motion to elect made during the trial, having the same purpose, should have been granted.

An examination of the complaint will obviate and eliminate most of the difficulties presented by the foregoing assignments of error. It is apparent that the sole object of the suit was to recover on the guaranty. In that instrument the principal debtor is called the Leader Hardware Co., Ltd., and nothing therein contained fixed its status either as a partnership or a corporation. It became necessary, therefore, to allege facts showing its proper classification. It is asserted in the pleading that the principal debtor is a corporation, except for failure to record its articles of incorporation as required by law, and that appellants are estopped from denying its corporate capacity. The complaint presents but one single cause of action for recovery upon this guaranty of the debts of a corporation. If it was a *de facto* corporation, appellants are liable upon their guaranty of the debts of an existing corporation. If it was not even a *de facto* corporation, they are liable still upon the guaranty, because they are estopped to deny the corporate entity of the principal debtor. That is the whole theory of the complaint. It is not sought therein to hold appellants liable because of their deceit or fraud, but desiring to rely upon estoppel, respondent pleads facts from which an estoppel would arise. These allegations were not inconsistent and the motion to strike was properly denied.

In *Hughes v. Farmers' Union Produce Co.*, 110 Neb. 736, 13 A. L. R. 1314, 194 N. W. 872, it is said that the authorities are practically unanimous upon the point that there must

be some color of a corporate franchise before even an inference of such a corporation is permissible, and that "up to the filing of the articles the power and authority of the state is not invoked, and the body has not received the breath of life necessary to its existence as a legal entity, defective or perfect."

The Leader Hardware Co., Ltd., was not, at the time the guaranty was signed, even a corporation *de facto*, because it had not filed its articles of incorporation or attempted to do so, as required by law. (1 Fletcher's Cyc. of Corporations, p. 608, sec. 298; *Finnegan v. Noerenberg*, 52 Minn. 239, 38 Am. St. 552, 53 N. W. 1150, 18 L. R. A. 778; *Harrill v. Davis*, 168 Fed. 187, 22 L. R. A., N. S., 1153; *In re Ballard*, 279 Fed. 574; *Greene v. Dennis*, 6 Conn. 293, 16 Am. Dec. 58.)

While the allegations of the complaint do not show that the Leader Hardware Co., Ltd., was a corporation *de facto*, the pleading of the facts relative to the attempt to incorporate, and its designation throughout the complaint as a corporation, was not surplusage, or improper. The statement of these facts was a convenient means to distinguish it from an association or partnership, and a basis for pleading estoppel. The failure of these associates to observe the directions of the statute as to filing their articles of incorporation did not impair, in the least, the rights of respondent which had contracted with them upon the assumption that it was dealing with a corporation *de jure*. It is alleged in the complaint that corporate functions were assumed and exercised, and the legal existence of the corporation cannot be here inquired into, although some of the legal formalities were not complied with.

Where a person seeks to deny the corporate existence, and has himself done something which would render such denial inequitable, and therefore estops him from making it, the corporate existence will not be suffered to be put in issue; although, were he not estopped, such person might be able to show that the assumed corporation had not even attained the dignity of a corporation *de facto*. (*People v.*

*Montecito Water Co.*, 97 Cal. 276, 33 Am. St. 172, 32 Pac. 236; *Corey v. Morrill*, 61 Vt. 598, 17 Atl. 840; *Attorney General v. Simonton*, 78 N. C. 57; *Beal v. Bass*, 86 Me. 325, 29 Atl. 1088; *Tama Water Power Co. v. Hopkins*, 79 Iowa, 653, 44 N. W. 797; *Allen v. Rhodes*, 230 Fed. 321, 144 C. C. A. 463; *Dows v. Naper*, 91 Ill. 44; *Thompson v. Reno Savings Bank*, 19 Nev. 103, 3 Am. St. 797, 7 Pac. 68.) This rule operates against persons assuming to be stockholders and members of an invalidly incorporated corporation who make such representations. (See cases above cited; also, *Whitney v. Wyman*, 101 U. S. 392, 25 L. ed. 1050; *Tulane Improvement Co. v. S. A. Chapman & Co.*, 129 La. 562, 56 So. 509; *Casey v. Galli*, 94 U. S. 680, 24 L. ed. 307; *Building & Loan Assn. of Dakota v. Chamberlain*, 4 S. D. 271, 56 N. W. 897.) Persons acting as officers and directors of such an association, guaranteeing its debts, are estopped from denying its corporate existence. (*Hanson v. Martin*, 192 Wis. 40, 211 N. W. 790; *Terras v. Ralburn*, 108 Ga. 345, 33 S. E. 989.) In such cases the estoppel renders it unnecessary to prove either a *de jure* or *de facto* corporate existence. It is only necessary to prove that the association was acting as a corporation, and that it dealt with, or was dealt with, as such. (1 Clark & Marshall on Corporations, p. 182. See, also, *Gartside Coal Co. v. Maxwell* (C. C. A.), 22 Fed. 197.) The evidence in this case is ample to prove the representations by appellants, and the further fact that respondent, relying on such representations, dealt with the Leader Hardware Company, Ltd., as a corporation. Relying on the estoppel, there was no necessity for respondent to prove the corporate capacity of the Leader Hardware Company, Ltd.

It is urged, however, that estoppel is not pleaded because it is apparent that respondent had a convenient and reasonable means of ascertaining the falsity of the representations made to it. Appellants cite, in this respect, *Cahoon v. Seger*, 31 Ida. 101, 168 Pac. 441, wherein it is said:

"In order to apply the principle of equitable estoppel it is essential that the party claiming to have been influenced by the conduct or declarations of another to his injury was himself ignorant of the facts in question and also without any convenient and available means of acquiring such knowledge. Where the facts are known to both parties or both have the same facilities for ascertaining the truth there is no estoppel."

While the representations made by appellants were about a matter which the law requires to be of public record, when the person setting up the estoppel is misled or deceived by the active actions, declarations and conduct of the other party, even in the case of constructive notice by a matter of record, the one to whom such conduct is imputable will be estopped from thereafter asserting the contrary to his previous declarations, actions and conduct. (*Eastwood v. Standard Mines etc. Co.*, 11 Ida. 195, 81 Pac. 382. See, also, *Westerman v. Corder*, 86 Kan. 239, Ann. Cas. 1913C, 60, 119 Pac. 868, 39 L. R. A., N. S., 500.)

Where a contract has been made with a corporation which later changes its name, such fact should be alleged, and it should be further averred that the contract was made with it under its former corporate name. In the complaint here, no such direct and positive allegation appears, or suggestion thereof except by inference. This omission was not pointed out in the demurrer filed, nor during the trial so as to permit or suggest the advisability of amendment. It is apparent that the attention of the court or counsel was not directed to this defect, and the necessity of amendment to clearly state these facts, rather than leave them to intendment and inference. The complaint does not conform to the rules of good pleading in this respect. However, it is alleged throughout that the written guaranty was given to the plaintiff, and there can be no uncertainty on that score. The effect of the objection now presented is that it is not alleged specifically that the plaintiff was, *eo nomine*, the obligee named in the letter of credit. This objection is not tenable. Under the complaint, it was

competent to prove that it was the identical corporation to which the guaranty was delivered, and the proofs which were adduced at the trial and the judgment entered deprive the objection of all force at this time. (*Medling v. Seawell,* 35 Ida. 333, 207 Pac. 137.) While not approving the form of this particular pleading, in view of the facts disclosed at the trial and it conclusively appearing therefrom that no rights of appellants were prejudiced or circumscribed in any respect by reason of this omission, we think the judgment should not be set aside because of this defect in the pleading, since the fair inference to be drawn therefrom is correct, although not positively alleged. It is patent that appellants knew full well that respondent and the obligee named in the guaranty were one and the same corporation.

The complaint stated a cause of action not subject to the attacks directed against it, and the demurrer and motion to strike were both properly overruled and denied. The court did not err in refusing to grant the motion made at the trial that plaintiff be required to elect upon which theory it would rely.

On the date set for trial, the appellants served and filed a motion for continuance, because of the absence of a witness. The cause had been set for trial by an order entered forty days prior to that date. The absent witness resided outside the state, but had promised to be present. At the last moment, counsel ascertained that he would not be available to testify. Witnesses for the respondent from Minnesota, North Dakota, Oregon and widely scattered places in Idaho were in attendance. The testimony of the absent witness would have been, at the most, largely cumulative. Appellants took a chance that he would be present, rather than take his deposition, although ample time intervened for so doing. The motion was denied, and this is assigned as error. That the granting of a continuance is a matter largely within the discretion of the trial court is a well-established principle of law. The fact that this witness agreed to testify is not such a showing of diligence as

will suffice to secure a continuance. A postponement of the trial due to the absence of witnesses will not be granted without a showing of due diligence to procure their attendance and the use of legal means to procure the desired evidence. A bare request that the witness attend the trial is in no sense a compliance with the requirements of the law. (*Rankin v. Caldwell*, 15 Ida. 625, 99 Pac. 108.) The court committed no error in overruling such motion.

▇▇▇▇▇ There are many assignments of error alleged to have occurred during the trial. Appellants complain of the rulings of the court in the admission of certain copies of letters, where the originals were not produced. The testimony tends to show that the originals had been lost or destroyed, and that the copies were correct copies of the lost documents. The stenographers who made the copies, being absent from the state, were not called to testify, but an officer of the respondent corporation stated that the copies so admitted were made under his supervision and were retained in the office files as correct copies. The foundation for and authenticity of secondary evidence is for the court in the first instance, and except in case of abuse of discretion, the order of the trial court in their admission or rejection will not be reversed on appeal. (Wharton on Evidence, sec. 141; *Bagley v. McMickle's Admr.*, 9 Cal. 430.) The letters, copies of which were so admitted, merely expounded certain oral testimony, and the materiality of such letters consisted only in their tendency to elucidate and render probable the theory of respondent. The matters therein contained had little probative value to the real dispute, and these letters were simply explanatory of the understanding these parties had of their various transactions throughout the years this account between them existed. Objections to these exhibits were made, which we look upon as purely technical, and this evidence was relatively unimportant. There was no reversible error committed in the admission of such secondary evidence under the circumstances in this case.

Certificates of the secretary of a foreign state were admitted to show the incorporation and change made in the corporate name of respondent, and this is assigned as error, for the reason that allegations of such change in name were not contained in the complaint. The only grounds upon which such objections were interposed were that such evidence was incompetent and immaterial. There was no objection that there was a variance between the pleadings and proof. It is argued that this change in name was such a change of obligee as to release the guarantors. The decisions cited by appellants, in actions involving change in members of a partnership and from partnerships to corporations, or from individuals to corporations, are not in point, for in such cases there is an actual change of obligee, whereas in the mere change of name of a corporation, there is no change whatsoever. (Thompson on Corporations, 2d ed., 3191; *W. T. Rawleigh Co. v. Grigg* (Mo.), 191 S. W. 1019; *W. T. Rawleigh Medical Co. v. Bunning*, 104 Neb. 179, 176 N. W. 85.) In the case last cited, the court said:

"The main issue appears to be that the change of name of the corporation after the contract was entered into prevented the plaintiff from maintaining this action against the defendants under the contract of guaranty. . . . . That 'guarantors are favorites of the law' is true, but that rule cannot be extended as claimed and insisted upon by the defendants herein. The corporation is the same with which they made their contract; only the name is changed; and the plaintiff, as disclosed by the record, had a right, and it was its duty, to bring the action in the changed name, . . . . " etc.

The appellants had at all times been dealing with the same identical corporation, and were not surprised or misled in any way by the admission of such evidence.

One of the defenses pleaded was that the plaintiff was a noncomplying foreign corporation, and consequently could not maintain this action in the courts of this state. Appellants attempted to prove that respondent maintained warehouses in the state of Idaho, wherein it kept stocks of

goods, and that it paid taxes thereon, and that it did at times deliver goods to some of its customers from these warehouses. All the evidence in this case, however, without dispute, showed that all the dealings between the respondent and the Leader Hardware Co., Ltd., were in every respect interstate transactions. All orders were mailed to Duluth, Minnesota, and all goods were shipped into Idaho to the Leader Hardware Co., Ltd., from outside states. It conclusively appears from the evidence, so far as the business done, relating to orders taken and goods shipped, were concerned, that these were purely interstate-commerce transactions. The court excluded the offers of evidence, for the reason that every item of the business between the respondent and the Leader Hardware Co. Ltd., during the twelve and one-half years this relationship continued, was interstate commerce beyond question. Not a single item of intrastate commerce was suggested by the evidence.

This court, in *Bettilyon Home Builders Co. v. Philbrick*, 31 Ida. 724, 175 Pac. 958, in considering this precise question, said:

"Does the statute prevent a foreign corporation from obtaining redress in our courts in the case of a cause arising on a contract made and performed outside of the state, although it may have been engaged otherwise in doing business in this state?

"A fair construction of the statute leads to the conclusion that a contract or agreement which cannot be sued upon or enforced in any court of this state, under the prohibition of the statute quoted above, is one growing out of the 'doing of business in this state' or so connected therewith as to be an element of such transaction. When the contract or agreement sued upon proves to be one which was made and performed outside of this state, the question as to whether the foreign corporation was doing business within the state is not material."

The trial court did not err in excluding the testimony or in denying the offer of proof to the effect that the respond-

ent was, in other matters and with other parties, doing business in this state.

Appellants urge as error the refusal of the court to permit them to prove the value of the customer's notes held by respondent as collateral. Evidence was admitted as to the amount which had been realized thereon from collections, to determine what the present debt of the Leader Hardware Co., Ltd., to respondent still was, to enable the jury to fix the amount of appellant's liability on the guaranty; but as to the face value of the notes or their actual value objections were sustained. Previous to the offer no evidence had been submitted tending to show that respondent had taken absolute title to the collateral security by the creditor's assignment, thus reducing the amount of the principal indebtedness of the Leader Hardware Company to respondent, and the materiality of the proffered evidence did not appear. No reoffer of this proof was made after appellants introduced evidence tending to show that respondent had taken title to the notes. In any event appellants could not have been prejudiced by its exclusion because the jury found, on conflicting evidence, that respondent did not take absolute title to the collateral security. The guaranty being an absolute one, the guarantors were absolutely and unconditionally liable, regardless of any diligence of the creditor in pursuing the principal debtor, or collecting the security. Under these circumstances proof of the value of the security was wholly immaterial to any issue of the case. (*Miller v. Lewiston National Bank,* 18 Ida. 124, 108 Pac. 901; Stearns on Suretyship, secs. 61, 95; *Hayden v. Long,* 8 Or. 247; *Home Savings Bank of Fremont v. Shallenberger,* 95 Neb. 593, 146 N. W. 993.) In case of an absolute guaranty the creditor is not obliged to resort to any security he may have. (28 C. J., p. 979, sec. 135; *Citizens Trust & Savings Bank v. Bryant,* 53 Cal. App. 735, 200 Pac. 823; *William Deering & Co. v. Russell,* 5 N. D. 319, 65 N. W. 691.)

Error is predicated upon the giving and refusal to give certain instructions. Those given fully and correctly

stated the issues, and appear to have been entirely fair and to have comprehensively covered every question of law properly involved in the case. It is true that various instructions, when singled out from the entire mass, did not embrace all the theories of the respective parties. This would be impossible of attainment. The court did, however, advise the jury that the instructions should be taken together, and considered as a whole, and that no one of them stated all the law of the case, but all of them, when taken together, stated the law which was to be applied to the facts, as the jury found such facts to exist. We cannot discuss here each individual instruction to which objection is interposed, because to do so would be the reiteration of the above proposition, and other questions previously discussed herein.

It is seriously urged that, because the court failed to instruct on the statutes of limitation, this eliminated one of the defenses from the consideration of the jury. This position is not correct, however, when it is remembered that appellants themselves take the position, and it is conceded by respondent, that the partnership debts were paid in full long prior to the inception of this action; that from at least the year 1911 until 1922 the corporation was in charge of and operating the business; that no new account had been opened with it since the partnership first began to function; and that over $125,000 of business was transacted, involving substantial payments each year, which payments must have extinguished the account of $6,500 which existed at the time the guaranty was given. There could have been no partnership debts remaining unpaid under any theory of the case. As to the corporation debts, the guaranty being a continuing one and unrevoked, the statutes of limitation had not run. Such a charge to the jury would have been an immaterial matter, and the court did not err in refusing to give the requested instruction on that issue.

The court properly instructed the jury in effect that unless the Leader Hardware Co., Ltd., had filed its articles of

378

incorporation at the date of the guaranty, it was not a corporation *de facto* or *de jure*. While the instructions given on the question of and defining corporations and their status may have been somewhat confusing, the effect thereof was as above stated, and the jury could not have been misled thereby.

All matters contained in the other requested instructions, in so far as they correctly stated the law applicable to the case, were covered by instructions given; and we find no error in the failure to give any of the requested instructions that were refused, or in modifying others which were given as amended.

Finally it is urged that the court erred in denying appellants' motion for a nonsuit, which was based largely upon the insufficiency of the evidence. As previously stated, the evidence cogently supports the judgment entered. The verdict was not based upon slight or unconvincing proof, but was in accord with the great weight of the evidence. If it should be conceded that some trivial errors did occur at the trial, it cannot be conceived that such, if eliminated, would have changed the result in any respect.

Other assignments of error necessitated the consideration and review of many other questions not herein discussed, but we find no error in them.

We recommend that the judgment be affirmed, with costs to respondent.

Babcock and Featherstone, CC., concur.

The foregoing is approved as the opinion of the court, and the judgment is affirmed. Costs to respondent.

Wm. E. Lee, C. J., and Taylor and T. Bailey Lee, JJ., concur.

Budge, J., dissents.

Givens, J., disqualified.