FLAVIUS O. BEAL AND EZRA L. STERNS

*vs.*

JOSEPH P. BASS, AND EASTERN MAINE STATE FAIR.

Penobscot. Opinion March 31, 1894.

*Partnership. Corporations. Estoppel. Lease.*

The plaintiffs alleged that they and the defendant, Bass, formed a private business partnership for holding fairs, races, etc., with the view to the pecuniary profits thereof accruing to themselves personally; that as such partnership they had acquired and held a leasehold from the defendant, Bass, of the fair grounds, having made erections, constructions and improvements; and owned them as partnership assets together with a surplus in cash.

The prayer of the bill was for a dissolution of the partnership, a sale of the leasehold estate and a division of the proceeds, with the cash surplus, among the partners.

At the hearing upon the bill in the court below, before a single justice, it appearing to him that the parties had held themselves out, at first, as self-constituted trustees for the purpose of holding public fairs, and later, as trustees under authority of a legislative charter granted to the Eastern Maine State Fair, the plaintiffs were required to make the corporation a party to the suit.

*Held;* upon the facts found by the court that, whatever may have been the original understanding or design of the parties, they have so plainly and continuously held themselves out as managers, officials, and trustees of a public enterprise, and have thereby obtained so much public support and money, they are now estopped from asserting private ownership in all these public contributions.

*Also,* that the public having an interest in these proceedings, the corporation was a proper party to the bill.

The plaintiffs contended further that the corporation had ceased to exist and never had a legal board of executive officers.

*Held;* that they are estopped in these proceedings from denying the existence of the authority they had invoked and under which they assumed to act.

The defendant, Bass, claimed that the lease from him as owner of the fee had been forfeited by non-payment of rent. It appearing that the lease did not provide for a re-entry in case of non-payment of rents, nor for a forfeiture or termination of the lease in that event, *held;* that in the absence of such stipulations, the mere non-payment of rent does not work a forfeiture.

The court states the respective rights of the parties to the bill to be:

(1.) The Eastern Maine State Fair is in possession of the grounds, described in the bill, now under lease to the three personal parties in the suit. The corporation, as trustee for the public, has the title to the buildings and other improvements, subject to the lessees' rights to be re-imbursed for taxes paid by them and a reasonable rent for such time as the corporation, or its predecessors, have occupied their land for holding fairs. This claim for taxes and rent is, in equity, a lien on the property.

(2.) The three personal parties have each an undivided third part of the leasehold estate. If the plaintiffs elect to regard it as subsisting and not surrendered, they are entitled to a division to be effected by a sale.

(3.) The respective rights and duties of the three personal parties under the lease up to July 5, 1889, when defendant Bass claimed it was forfeited, can be determined in an action at law. Those rights and duties accruing after that date will depend upon whether the plaintiffs elect to claim their leasehold interest, or elect to abandon it.

IN EQUITY.

This was a bill in equity, heard by a single justice, in the court below, on bill, answers and testimony. The following decree was there made:

"This cause came on for hearing on the second day of April, A. D., 1892, and was argued by counsel and was thence held for advisement until the sixteenth of June, A. D., 1892, when

the opinion of the presiding justice was filed and the cause was further held for advisement and to enable the defendant corporation, the Eastern Maine State Fair, to accept the benefits provisionally tendered it in the opinion, which have since that day been rejected by said corporation.

"It is therefore ordered, adjudged and decreed at these September Rules, to wit, on the thirteenth day of September, 1892, that the unexpired term of fifty years, to wit, fifty years from July 1, 1883, in Maplewood Park and fair ground in Bangor, including five acres purchased of Stone by Joseph P. Bass as a part of said park and fair ground, at an annual rental of five hundred dollars, and all taxes assessed thereon, the rent being payable semi-annually to said Bass during the remainder of said term, be sold at public auction to the highest bidder, and that the parties to this suit be required to execute a lease of the whole of said premises to such purchasers upon the same terms and conditions (except as to amount of rent) named in the lease from Joseph P. Bass to Messrs. Beal and Sterns of two undivided thirds of said property, stipulating for the payment of rent as aforesaid, to wit, five hundred dollars per annum, payable semi-annually, and taxes assessed thereon for the remainder of said term.

"It is further ordered, adjudged and decreed that any of the parties to this suit may become purchasers at said sale, and that in such case such releases or conveyances be required as will work out the purposes of this decree.

"It is further ordered, adjudged and decreed that Jasper Hutchings, Esquire, be appointed receiver to conduct said sale, first giving bond with sureties to the clerk of the court and his successors in office for the benefit of whom it may concern in the penal sum of $10,000, conditioned for the faithful discharge of his office. That he advertise said sale in some or all of the Bangor papers and otherwise as his judgment may determine for at least thirty days before the day of sale.

"It is further ordered, adjudged and decreed that said receiver apply the proceeds of said sale, first, to the expenses thereof, including his own fees as allowed by the court. Second, to the

costs of this suit. Third, to the payment of the sums due said
Bass, Beal and Sterns, respectively, as adjudged in the opinion
filed in this cause, *pro rata*, or in full as he may be able to do,
and if any balance remains he is to pay the same into the regis-
try of this court to be disposed of as the court may consider.

"It is further ordered, adjudged and decreed that to any sum
so paid into the registry of this court as aforesaid, any party
who may have an equitable claim thereto may intervene to the
end that such fund may be disposed of as equity and right may
require, and that this decree may be considered a final decree
for all purposes of appeal if any party may so desire."

The cause was heard on appeal by the full court.

The facts are stated in the opinion.

*F. A. Wilson* and *C. F. Woodard, F. H. Appleton* and *H.
R. Chaplin,* for plaintiffs.

*J. W. Symonds,* for J. P. Bass.

*A. L. Simpson,* for Eastern Maine State Fair.

SITTING : LIBBEY, EMERY, FOSTER, WHITEHOUSE, WISWELL,
JJ.

EMERY, J.   This is an equity appeal with a long record in
which able and diligent counsel have placed every circum-
stance they thought might support their various contentions.
We have studied the whole record in every detail, but in stating
the case, to save space and preserve clearness, we can only
recite what seems to us to be important, controlling facts, and
where there is a conflict of evidence, state simply our conclusions.

Flavius O. Beal, Ezra L. Sterns and Joseph P. Bass, the
personal parties to this suit, were all citizens of Bangor each
having large property interests in and about that city, and each
having more or less taste for good horses, cattle and farms.
Sometime in the latter part of 1882, or early part of 1883, Mr.
Beal and Mr. Bass had a conference as to the desirability and
feasibility of establishing a driving park and fair grounds in
Bangor, and having an annual fair and races held there for the
eastern part of the State, the State Fair having been located
permanently at Lewiston. With a view to an incorporation

under the general law which required three persons, they asked Mr. Sterns to incorporate with them, which he agreed to do.

These three gentlemen determined to proceed with the enterprise thus suggested, and in order to provide necessary grounds they purchased in June, 1883, a leasehold estate of fifty years from January 1st, 1883, in the land of Mr. Bass which is now known as Maplewood Park in Bangor, at a yearly rental of four hundred and fifty dollars. Mr. Beal and Mr. Sterns stipulated to pay three hundred dollars of this annual rental. Mr. Bass being the owner of the fee furnished the other third. A lease between Mr. Bass and Messrs. Beal and Sterns was executed to effect this arrangement.

The parties to raise the necessary funds, prepared and circulated throughout Bangor subscription papers in aid of the enterprise. These papers were of the following tenor, viz. : "We, the undersigned agree to pay F. O. Beal, J. P. Bass and E. L. Sterns the sums set against our names for the purpose of establishing a park in the city of Bangor to be known as the Eastern Maine Fair Grounds ; and to pay the same as assessed for the construction of a race track, and suitable buildings to be constructed on land purchased by J. P. Bass of George A. Stone, William H. Bussey and Lydia A. Jewett in said Bangor ; the grounds to be laid out by a competent engineer and contain thirty-five acres more or less. All the money subscribed to be laid out in the construction of a track, fence, buildings and other improvements as the managers may decide."

Mr. Beal, Mr. Sterns and Mr. Bass each subscribed four hundred dollars on these papers. There were obtained from other subscribers over $5000.

The parties also applied to the city council of Bangor for assistance for the enterprise, and obtained $1000 from that source.

In the meantime they raised $3500 upon their own individual note and began the construction of a necessary track and buildings for the fair ground on the leased land. They advertised a fair to be held upon these grounds, September 25 to 28 inclusive, advertising it as the "Eastern Maine Fair, President, Hon. J. P. Bass ; General Superintendent, F. O Beal ; Secretary, Ezra

L. Sterns; Treasurer, E. B. Nealley; Chief Marshal, Major F. H. Strickland." Mr. Nealley did act to some extent as treasurer. The fair was held as advertised and the surplus proceeds devoted to the payment of loans and bills incurred for construction. The remaining liabilities were met or extended by discounting new notes of the parties or renewing old ones.

In September, 1884, the parties advertised and held another fair, this time as the Eastern Maine *State* Fair but under the same officers and auspices. The surplus proceeds of this fair were also devoted to the payment of the debt for construction. The city also granted them this year the sum of five hundred dollars which was applied in the same way.

In the following winter, 1885, at the first session of the Legislature after the enterprise was started, the parties applied for a special charter for a Fair Association, preferring such a charter to one under the general law by reason of the police powers conferred. They, with twenty-five other prominent men in the eastern part of the State, were incorporated by the name of "Eastern Maine State Fair" with the usual powers and duties of agricultural societies under the general law of the State. No capital stock or stockholders were provided for in the charter.

Pursuant to this charter, Messrs. Beal, Sterns and Bass of the corporators called the first meeting of the corporators to be held at Bangor, April 14, 1885. At that meeting and at an adjourned meeting thereof, all three of the present parties appeared with several other corporators; accepted the charter, and organized the corporation in the usual manner. Under the by-laws adopted, there was to be a board of twenty-five trustees chosen by the corporation, and a board of "executive officers" consisting of a president, vice-president, secretary, treasurer and auditor, to be chosen by the trustees. Each of these executive officers was to hold office until another was chosen in his place, and vacancies could be filled by the board.

Pursuant to these by-laws twenty-five trustees were chosen at the meeting. A meeting of these trustees was called the same day immediately after the adjournment of the corporate meeting, and they elected Mr. Bass, president; Mr. Beal,

vice-president; Mr. Sterns, secretary; Mr. Nealley, treasurer and Mr. Simpson, auditor. The validity of this meeting of these trustees has since been questioned, but that will be discussed hereafter.

In the meantime, subscriptions of twenty dollars each had been procured from some eighty odd persons to constitute them life members of the corporation; and after the organization, Mr. Sterns, as secretary, issued to these subscribers a certificate of membership, stating that the holder was entitled to the privileges of the association.

Fairs were advertised and held in each of the years 1885, 1886, 1887 and 1888, in the name of the Eastern Maine State Fair, J. P. Bass, president; F. O. Beal, vice-president; Ezra L. Sterns, secretary; E. B. Nealley, treasurer; A. L. Simpson, auditor. During these years the managers received over $1600 paid for life membership in the corporation. They also received from this State the stipend voted by the Legislature to the corporation for holding fairs. This stipend amounted to $3000. In the year 1887, a personal injury was received upon the fair grounds for which a suit was brought against the corporation, and defended by counsel assuming to appear for the corporation, and directed to so appear by the managers of the fair.

At the close of the fair of 1888, it was found that the surplus receipts of the various fairs and the various money contributions of citizens, city and State, in aid of the enterprise had paid all the construction account, relieved Messrs. Beal, Sterns and Bass from all the liability incurred by them, except the rental and taxes for the land, and left a balance of $2231.73 to the credit of Eastern Maine State Fair.

So far, there seems to have been reasonable harmony of opinion among these parties, and if any one of them was specially active and persistent, the others seemed to have acquiesced. The rent, however, had not been paid except the first installment. Messrs. Beal and Sterns had several times suggested paying the rent out of the receipts, but Mr. Bass had suggested that it stand until the fair was better established. Now, to-wit: in the spring of 1889, Mr. Beal and Mr. Sterns desired that the surplus of $2231.73 be applied to the rents.

Mr. Bass urged that it should be applied to making what he thought were necessary improvements in the track. No agreement was reached and Mr. Bass, being the president of the fair, soon afterward began to expend the money in making changes in the track. Mr. Beal thereupon served upon him, June 11th, a written notice of dissent and insistence that the money should be applied to the rents. Mr. Bass replied by a written notice, July 5th following, that he had taken possession of the land as owner of the fee for forfeiture of the leasehold estate for non-payment of rent.

About the same time, Mr. Beal sent to Mr. Sterns as secretary of the Eastern Maine State Fair, a written resignation of his office as vice-president, which fact was published in the Bangor newspapers. He withdrew the resignation from the secretary but not before it had been shown to Mr. Bass. The latter after seeing the letter of resignation called a meeting of the executive officers, who assumed to accept the resignation of Mr. Beal and elect Mr. Greely vice-president in his place. They also assumed to ratify Mr. Bass's expenditure of the money. Mr. Sterns does not seem to have formally resigned or been superseded. Neither Mr. Beal nor Mr. Sterns, however, took any part in any fairs or in any proceedings of the association or its officers subsequent to July 5th, 1889. Mr. Bass and the other associates, including Mr. Greely, all assuming to be, and to act as executive officers of the corporation, have held and managed fairs on the same grounds annually up to this time.

These differences of opinion between these three parties, led to a suit at law by Mr. Bass against Messrs. Beal and Sterns for the recovery of the rent up to July 5, 1889, and to this bill in equity by Messrs. Beal and Sterns against Bass.

We have now to review the allegations and proceedings in this suit in equity :

The plaintiffs, Messrs. Beal and Sterns, allege that at the outset the three, Beal, Sterns and Bass, formed a private business partnership to carry on the business of holding fairs, races, etc., with the view to the pecuniary profits thereof,

accruing to themselves personally; that, as such a partnership, they acquired and held the leasehold estate, made the various erections, constructions and improvements; and now own them as partnership assets together with the surplus heretofore stated of $2231.73. Their prayer is that the partnership be dissolved, and that the leasehold estate and the other property be sold; and that the proceeds, with the cash surplus, be divided among them as partners.

The justice hearing this cause in the first instance, was not convinced of the correctness of this claim, but was led by the evidence to believe that the parties had held themselves out, at first, as self-constituted trustees for the public purpose of holding fairs, and later as trustees under authority of the legislative charter. He thereupon required the plaintiffs to make the corporation, the Eastern Maine State Fair, a party to the suit, which the plaintiffs did under protest.

This question of partnership or trusteeship, is the main question in the case, and our view of the evidence does not require us to overrule or reverse the finding of the justice of the first instance in that particular. The subscription papers prepared by the parties at the outset, and which they signed themselves, and upon which they collected several thousand dollars from citizens of Bangor, did not hint that it was a private enterprise. They stipulated that the money should be laid out in construction of track, buildings and other improvements "as the *managers* may decide." In advertising and holding the first two fairs, they did not describe themselves as a firm, nor as owners, but as officers, Mr. Bass as president, Mr. Sterns as secretary, Mr. Beal as general superintendent. An office implies a service, a duty, a trust to be performed. They sought incorporation, as an agricultural society, without stock or chance for dividends. They held up the charter thus obtained, as their lawful oriflamme, and under it, they professed to serve as officers or trustees, Mr. Bass again as president, Mr. Sterns as secretary, and Mr. Beal this time as vice-president. As such officers, they drew from the State treasury stipends never appropriated nor intended for private firms. With this

same banner flying, they gathered some $1600 more from citizens of Bangor as fees for life membership in the association. They have in their official guises, received from popular subscriptions $6600 and from the public treasury, state and city, $4500. In the same guise, they gathered enough additional funds by attendance of the people at the various fairs, to construct buildings and improve the grounds at Maplewood park until they are said by Mr. Beal to be worth $30,000.

Whatever may have been the original understanding or design of the parties, they have so plainly and continuously held themselves out as managers, officials, trustees of a public enterprise, and have thereby obtained so much public support and money, they are now estopped from asserting private ownership in all these public contributions. After coming to this conclusion we might in strictness dismiss the bill, since the main question is determined against the plaintiffs ; but to do so will not terminate the litigation, as the respective rights of the parties would remain undetermined. For this reason and because of suggestions at the argument it seems best to retain the bill for such amendments and further proceedings as may determine and enforce these rights. We, therefore, proceed with the consideration of some other questions raised in the arguments.

The plaintiffs contend that the original three parties are the only proper parties in this proceeding; but, assuming the correctness of our conclusion stated just above, it must be apparent that other parties, the public, do have an interest in the proceedings ; in the disposition of this property, and that some person representing those interests should be made a party to the bill. The " Eastern Maine State Fair " is clearly such person. The Legislature for the people and at the request of the original parties, created the " Eastern Maine State Fair " to take charge over this enterprise and its assets, as trustees for the public. It was properly made a party to this bill to look after the interests thus intrusted to it.

The plaintiffs further contend that the Eastern Maine State Fair, though authorized to exist, never in fact did exist, or if it ever breathed, it at once ceased to breathe ; that it cannot now

be regarded as an existing corporation or party in any proceedings. They claim that no meeting has been held since that for organization, that the trustees never had a legal meeting for want of a quorum, hence there was never a legal board of executive officers, that there never was a legal meeting of even a *de facto* board. The plaintiffs, however, took part in the organization, took part in the meeting of the trustees, took office under the trustees, acted as such officers, drew the stipends appropriated to the corporation. Any irregularities or omissions in the matter of meetings of members, trustees, or officers, the plaintiffs are more or less responsible for. They are clearly estopped now from denying the existence of the authority they invoked, and under which they assumed to act. The State has repeatedly recognized the existence of the corporation by making appropriations for its benefit, and paying them over to persons assuming to be its officers.

However careless the officers and members of the corporation may have been in the matter of meetings and records, it still has an existence and character sufficient for it to be a party to these present proceedings. At least, the plaintiffs cannot be heard to say that it has not.

There remains the original fifty-year leasehold estate, which the three parties acquired, and for the rental of two thirds of which, the plaintiffs became responsible to the owner of the fee. The defendant, Mr. Bass, speaking now as owner of the fee, claims that this estate was extinguished by forfeiture for non-payment of rent July 5, 1889, and hence is no longer a subject for consideration. He assumed at that time, July 5, to make an entry to resume possession as owner of the fee, and to terminate the leasehold estate for non-payment of rent, and he gave written notice thereof to the plaintiffs.

The instrument creating the estate did not provide for any re-entry for non-payment of rent, nor for any forfeiture or termination of the estate in that event. In the absence of any such stipulation, the mere non-payment of rent does not work a forfeiture of the estate. Taylor's Landlord and Tenant, 359.

The defendant further claims that the plaintiffs, by making

no objection to his taking possession, and making no effort to regain possession, have thus voluntarily terminated the estate. The virtual possession however had been in the Eastern Maine State Fair for three years previous to the alleged entry, and continued in the same association afterward. We find no evidence of voluntary surrender of their estate by the plaintiffs. So far as this case shows, the leasehold estate still exists for the remainder of the term and each party owns one third of it.

Mr. Bass afterward assumed to lease the land to the corporation but of course that act of Mr. Bass and the corporation, does not destroy the interests or rights of Messrs. Beal and Sterns in the premises. Nevertheless, the acts of Mr. Bass have been such that he cannot deny the termination of the leasehold estate, in case Messrs. Beal and Sterns elect to consider it terminated. Should they conclude to regard Mr. Bass's entry, in July, 1889, as a resumption by him of his original estate, Mr. Bass could not effectually claim that it was not.

We may now state with more brevity our views of the respective rights of each party to this bill.

I. The Eastern Maine State Fair, the association so named, is in possession of the grounds, the tract of land, described in the bill and in which Messrs. Beal, Sterns and Bass have a leasehold estate. The corporation party as trustee for the public has the title to the buildings and other improvements on those grounds, subject to the rights of the three personal parties to receive the taxes paid by them, and a reasonable rent for such time as the corporation or its predecessors have occupied their land for holding fairs. All advances made by any of the parties, except taxes paid, are admitted to have been re-imbursed ; and such taxes and a reasonable rent comprise now the only claim against the property so held by the corporation.

This claim, however, is in equity a lien on that property, it being equitable that the enterprise by whomsoever managed, should pay all the rent and taxes from the beginning. It is well settled that such claims may be enforced by equity proceedings.

II. Messrs. Beal, Sterns and Bass have each an undivided third part of the leasehold estate described in the bill, viz : — a

fifty-year lease of the land from January 1st, 1883. Messrs. Beal and Sterns have not necessarily forfeited their interests, and if they elect to regard the leasehold estate as still subsisting, as not surrendered by them, they are entitled to a division of the estate. This division evidently can only be satisfactorily made by a sale of the estate and a division of the proceeds. This fact confers jurisdiction in equity.

III. The respective rights and duties of Messrs. Beal, Sterns and Bass up to July 5th, 1889, under the instrument signed by them to create the leasehold estate can be determined in the action at law. As to those rights and duties accruing after that date, they will depend upon whether Messrs. Beal and Sterns elect to claim their leasehold interest as still existing after that date, or elect to abandon it to Mr. Bass under his claim of entry and forfeiture of that date.

There remain to be determined the following questions, (1) What is the amount of the taxes paid? (2) What is the reasonable rent for the use of the land, no particular sum having been stipulated? (3) What is the relative or proportional value of the leasehold estate belonging to Messrs. Beal, Sterns and Bass, and the buildings and other improvements belonging to the fair corporation?

We think the further procedure may be substantially as follows: The cause may stand over for thirty days after the filing of this opinion, within which time the plaintiffs may amend or reform their bill to state and enforce their rights as indicated in this opinion; and in the amendment elect whether they retain or abandon their interest in the leasehold estate since July 5, 1889. If they decline to amend then the bill should be dismissed. If the amendment is made, then the case should be sent to a master to ascertain the amounts that are to be paid by the fair corporation for taxes and rents up to such time as the plaintiffs elect to claim an existing leasehold estate; and also to ascertain the proportion of the value between the leasehold estate and the improvements. Upon the coming in of the master's report, a time can be fixed within which the fair corpo-

ration may pay the sum found due.    Should it fail to pay within that time, then the leasehold estate, if such be claimed, and the improvements can be sold, and the proceeds divided according to the relative value of each as found by the master, the value of the leasehold going to Messrs. Beal, Sterns and Bass, one third to each, the value of the improvements to be applied to the payment of rent and taxes due to the same parties, one third to each, and the surplus to be paid over to the Eastern Maine State Fair.    Of course, out of the proceeds of the sale if made, must first be taken the costs and expenses thereof.    The costs of this suit can be hereafter determined and provided for.

The details of the necessary orders and decrees can be settled by a single justice.

> *The interlocutory decree making the Eastern Maine State Fair a party is affirmed.    The final decree is vacated and the case remanded for further proceedings according to this opinion.*