Peter J. RUBIN et al.

v.

Jean C. McCall JOSEPHSON.

Supreme Judicial Court of Maine.

Argued May 2, 1984.

Decided June 4, 1984.

Bernstein, Shur, Sawyer & Nelson, Peter J. Rubin (orally), Portland, for plaintiffs.

Ricky L. Brunette (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

The defendant, Jean C. McCall Josephson, appeals from a judgment of the Superior Court (Cumberland County) denying her appeal from an order of the District Court, Portland, issuing a writ of possession upon the plaintiffs' complaint for forcible entry and detainer, 14 M.R.S.A. § 6001 (Supp.1983–1984). The defendant raises two issues for our review. First, the defendant contends the District Court erroneously determined that her written lease was terminated by reason of her nonpayment of rent. Second, the defendant argues the District Court exceeded its authority in a summary forcible entry and detainer action by entering findings of fact and conclusions of law pertaining to the plaintiffs' lack of responsibility for the damaged condition of the premises. Agreeing with the first contention, we reverse the judgment.

Under a three-year written lease executed in January, 1982, Jean C. McCall Josephson entered into possession of a condominium unit in a development in Cape Elizabeth. When in October, 1982, Josephson became more than fourteen days in arrears in her monthly rental obligation, plaintiffs-lessors Peter J. Rubin, Howard A. Goldenfarb, and John P.M. Higgins served Josephson with notice to tender the rent due or quit the premises. Josephson failed to comply with the notice, and the current action for forcible entry and detainer, in which the plaintiffs seek to recover possession of the condominium unit, was instituted.

On November 17, 1982, the defendant moved to dismiss the complaint. The defendant asserted the court was precluded from issuing a writ of possession of the premises because the complaint contained no allegation that the lease had been terminated or forfeited, and the lease contained no provision relating to termination or forfeiture for reason of nonpayment of rent. Subsequently, the defendant filed an answer to the complaint in which she admitted being over fourteen days in arrears in rent, but asserted such failure was excused. Three affirmative defenses were raised: the plaintiffs had breached the lease by failing to repair the premises as required; the condominium was damaged to an extent rendering it unfit for occupation as anticipated in the lease; and the plaintiffs had breached the covenant of habitability set forth in 14 M.R.S.A. § 6021 (1980 and Supp.1983–1984).

After a two-day hearing, the District Court, on December 6, 1982, denied the defendant's motion to dismiss and issued a writ of possession of the premises. On December 30, 1982, upon a rule 52(a) motion by the defendant, the court entered findings of fact and conclusions of law in support of its holding. Finding 4 read:

The obligation to pay rent pursuant to the terms of the lease is a material, essential and substantial term of the lease and the lease was subject to termination for failure to pay rent, pursuant to paragraph 13 of the lease and otherwise according to law.

Conclusion 1 read:

The Defendant, without any legal justification, breached her lease with the Plaintiffs by failing to pay rent and the lease was thereafter properly terminated by Plaintiffs. The Plaintiffs did not breach their lease obligations to the Defendant.

Finding the plaintiffs had violated no statutory obligation to the defendant in regard to warranties,[1] and the plaintiffs had complied with the procedural requirements of 14 M.R.S.A. §§ 6001 and 6002, the court declared the plaintiffs were entitled to possession of the premises. The Superior Court affirmed,[2] and this appeal follows.

I.

■ The judicial power in a forcible entry and detainer action—a summary proceeding to determine who has a right to immediate possession of real property to the exclusion of another—is purely statutory in origin.[3] *Tozier v. Tozier*, 437 A.2d 645, 647 (Me.1981); *Bicknell Manufacturing Co. v. Bennett*, 417 A.2d 414, 418 (Me. 1980); *Eveleth v. Gill*, 97 Me. 315, 317, 54 A. 756, 757 (1903). Therefore, to be entitled to a writ of possession upon a com-

plaint for forcible entry and detainer, the party seeking possession must bring himself within the terms of the controlling statute. *Gilbert v. Gerrity*, 108 Me. 258, 260, 80 A. 704, 705 (1911); *Eveleth v. Gill*, 97 Me. at 317, 54 A. at 757. Accordingly, the plaintiffs must have alleged and proved sufficient facts bringing them within the terms and conditions of 14 M.R.S.A. § 6001, which in pertinent portion reads:

§ 6001. Availability of remedy

1. Persons against whom process may be maintained. Process of forcible entry and detainer may be maintained against a disseisor who has not acquired any claim by possession and improvement; *against a tenant holding under a written lease or contract* or person holding under such tenant; against a tenant where the occupancy of the premises is incidental to the employment of a tenant; *at the expiration or forfeiture of the term, without notice, if commenced within 7 days from the expiration or forfeiture of the term;* and against a tenant at will, whose tenancy has been terminated as provided in section 6002.

(emphasis supplied). The specific question presented is does section 6001 require that the nonpayment of rent by the defendant result in forfeiture of the term of the written lease before the plaintiffs can exercise the right to forcible entry and detainer?

■ At initial glance, the various clauses within semicolons in section 6001 appear to be independent. So read, section 6001

1. The court entered several findings of fact in relation to the plaintiffs' lack of responsibility for moisture damage to the demised premises. The defendant, in her answer, asserted her failure to pay rent was justified because the plaintiffs, by failing to remedy the moisture problem, had not fulfilled their obligations under the lease, and had breached the warranty of habitability.

2. The Superior Court rejected the argument the defendant originally put forth in her motion to dismiss, *i.e.,* absent a clause in the lease that specifies nonpayment of rent results in termination or forfeiture, there is no basis for issuing a writ of possession. The court found that 14 M.R.S.A. § 6002(1), which provides that after

proper notice, a tenancy may be terminated for nonpayment of rent, was applicable to written leases for a term of years as well as to a tenancy at will. Our review of this matter, however, is confined to the District Court decision. When the Superior Court acts as an intermediate appellate tribunal, we review the initial determination of the adjudicatory body and not the decision of the Superior Court. *Williams v. Williams*, 444 A.2d 977, 978 (Me.1982); *Bigney v. Blanchard*, 430 A.2d 839, 843 (1981).

3. At common law, the summary process of forcible entry and detainer was criminal, or quasi-criminal in nature, and was allowed where the entry and detainer were with force. *Eveleth v. Gill*, 97 Me. at 317, 54 A. at 757.

would provide a lessor the right to maintain a forcible entry and detainer action against a tenant holding under a written lease, without specifying the breach which triggers the right. The plaintiffs argue it can be logically inferred from section 6001 that the right to maintain a forcible entry and detainer action arises when a tenant holding under a written lease breaches a material, essential, and substantial term of the lease, such as the obligation to tender rent. Were we to believe that the various clauses within section 6001 are independent, we would be inclined to agree. The legislative history of section 6001, as well as common sense, however, dictates a contrary result.

The forcible entry and detainer statute dates well back into the 1800s. Prior to amendment in 1933 the statute provided:

> Process of forcible entry and detainer may be maintained against a disseizor who has not acquired any claim by possession and improvement; against *a tenant holding under a written lease or contract, or person holding under such tenant, at the expiration or forfeiture of the term, without notice,* if commenced within seven days from the expiration or forfeiture of the term; and against a tenant at will, whose tenancy has been terminated as provided in the following section.

R.S. ch. 108, § 1 (1930). Under this version of the statute, there was no question that the right to maintain a forcible entry and detainer action against one holding under a written lease arose only upon expiration or forfeiture of the term. As stated in *Gilbert v. Gerrity*, "The process is authorized in but four cases, *viz:* ... against a tenant occupying under a written lease which has terminated; against such tenant when the lease is forfeited...." *Gilbert v. Gerrity*, 108 Me. at 260, 80 A. at 705. Therefore, the plaintiffs' contention that forfeiture or expiration of the term is not a prerequisite to maintenance of a forcible entry and detainer action is only correct if the legislature, when amending the statute in 1933,

intended to relieve the lessor of the obligation of alleging and proving expiration or forfeiture. Such does not appear to be the case. The legislative history surrounding the 1933 amendment gives no indication of an intent to change the statute in such manner. Rather, all that appears to have been intended was the addition of a fourth person against whom a forcible entry and detainer action could be maintained, *i.e.,* "against a tenant where the occupancy of the premises is incidental to the employment of a tenant...." P.L.1933, ch. 177, § 1 (clause 3 in § 6001). The placement of the provision appears to reflect an intent to limit the right to maintain a forcible entry and detainer action against *both* a tenant holding under a written lease and a tenant occupying premises as an incidence of employment to situations in which the term has expired or been forfeited. The placement of the semi-colons appears to be the sole result of less than meticulous draftsmanship.

Moreover, common sense convinces us that the legislature, in separating by semi-colons the clauses "tenant holding under a written lease" and "at the expiration or forfeiture of the term," did not intend to remove the stated prerequisite to maintenance of a forcible entry and detainer action against a tenant holding under a written lease. Section 6001 begins with the phrase, "Process of forcible entry and detainer may be maintained against ..." and then lists four categories of individuals, each category within semicolons. The "after the expiration or forfeiture of a term" phrase is also within semicolons, and is placed between different categories of individuals to which section 6001 may apply. This phrase makes no sense if separated from the two clauses preceding it and read together only with the phrase "Process ... may be maintained against ...."

 Having determined section 6001 requires expiration or forfeiture of term as a condition to maintenance of a forcible

entry and detainer action against a tenant holding under a written lease,[4] we must now consider whether the defendant's failure to pay the rent due amounted to a forfeiture of the lease. At common law, mere nonpayment of rent did not, in the absence of express stipulation to the contrary, give rise to a right to terminate a lease.[5] *See Beal v. Bass,* 86 Me. 325, 335, 29 A. 1088, 1092 (1894); *see also tenBraak v. Waffle Shops, Inc.,* 542 F.2d 919, 923 (4th Cir.1976); 3A *Thompson on Real Property* § 1335, at 606–07 (1981 Replacement); 49 Am.Jur.2d, *Landlord and Tenant* §§ 1020, 1029, at 991, 1000 (1970). Therefore, for the plaintiffs in the instant action to be entitled to possession of the premises leased to the defendant, they must establish either that the lease provided nonpayment of rent triggered a right to terminate, or the legislature has, by statute, made nonpayment of rent a ground for termination. *See Beal v. Bass,* 86 Me. at 335, 29 A. at 1092 (nonpayment of rent may constitute forfeiture where lease so provides).

The lease provision upon which the District Court and the plaintiffs rely reads in full:

> Termination: Upon the expiration or other termination of the lease, the Lessee agrees to deliver up the premises and equipment and Lessee shall be responsible for any damage caused by having animals within the condominium.

The District Court's finding that the effect of this provision was to terminate the lease upon nonpayment of rent is clearly erroneous. It is well-settled that a forfeiture provision in a lease is to be strictly construed against the party seeking to enforce it, and its enforcement is not to be favored. *E.g., Brazeal v. Bokelman,* 270 F.2d 943, 946 (8th Cir.1959); *Clifford v. Androscoggin & Kennebec Railroad Co.,* 121 Me. 15, 19, 115 A. 511, 513 (1921); *see also C Co. v. City of Westbrook,* 269 A.2d 307, 309 (Me. 1970).

At best, paragraph 13 of the defendant's lease is ambiguous. The provision states only that the premises must be delivered on "termination" of the lease. It discusses termination no further. In light of the rule

---

**4.** We reject the defendant's contention that the complaint was inadequate on its face because it failed to allege forfeiture or expiration with particularity. Although in *Eveleth v. Gill* we stressed the necessity of stating the statutory case fully and clearly in the complaint for forcible entry and detainer, *Eveleth v. Gill,* 97 Me. at 318, 54 A. at 758, *Eveleth* was decided prior to the advent of the modern rules of pleading. Whereas at common law, a declaration had to contain a clear and distinct averment of every fact essential to constitute the cause of action alleged, *see, e.g., Glidden v. Bath Iron Works Corp.,* 143 Me. 24, 33, 54 A.2d 528, 532 (1947), under modern pleading practice, a failure to plead with such particularity is not necessarily fatal. Under Maine Rule of Civil Procedure 8(a) (1984), a complaint is sufficient unless it appears to a certainty the plaintiff is entitled to no relief under any state of facts he might prove in support of his claim. *Jones v. Billings,* 289 A.2d 39, 40 (Me.1972). The function of the complaint is to provide fair notice of a claim, and a generalized statement of facts fulfills this function. *E.N. Nason, Inc. v. Land-Ho Development Corp.,* 403 A.2d 1173, 1177 (Me.1979). We hold the plaintiffs' complaint sufficiently apprised the defendant of the nature of the action against her.

**5.** We are mindful that the *Restatement (Second) of Property* § 12.1(2)(b) (1977), citing "widespread statutory provisions" and "the adoption of the dependence of obligations doctrine," has restated the law as follows:

> Except to the extent the parties to a lease validly agree otherwise, if there is a breach of the tenant's obligation to pay the rent reserved in the lease, the landlord may:'
>
> ....
>
> terminate the lease if the rent that is due is not paid promptly after a demand on the tenant for the rent, unless equitable considerations justify extending the time for payment.

*See also id.,* comment n. Although we express no disapproval of the legislative wisdom of a change in Maine law to reflect the above view, we are not prepared to adopt the restatement rule in place of established Maine law, particularly in this summary proceeding. In recent years, the landlord-tenant relationship has become the subject of extensive legislation in Maine. Our disinclination to follow the lead of the restatement reflects our deference to the legislature in this area.

of strict construction of forfeiture terms, this provision cannot be construed as *implying* that nonpayment of rent results in forfeiture.

We regard the District Court's finding that the lease in question was terminable "according to law" similarly flawed. As previously discussed, at common law, non-payment of rent did not by itself give rise to a right to terminate a lease. If such right is to be found, it must therefore originate from statute.

6. In its entirety, 14 M.R.S.A. § 6002 provides:
§ 6002. Tenancy at will; buildings on land of another

Tenancies at will must be terminated by either party by 30 days' notice, except as provided in subsection 1, in writing for that purpose given to the other party, and not otherwise, excepting cases where the tenant, if liable to pay rent, shall not be in arrears at the expiration of the notice, in which case the 30 days' notice shall be made to expire upon a rent day, provided that either party may waive in writing said 30 days' notice at the time said notice is given, and at no other time prior to the giving of such notice. Such termination shall not be affected by the receipt of moneys, whether previously owed or for current use and occupation, until the date a writ of possession is issued against the tenant during the period of actual occupancy after receipt of said notice. When the tenancy is terminated, the tenant is liable to the process of forcible entry and detainer without further notice and without proof of any relation of landlord and tenant unless he has paid, after service of the notice, rent that accrued after the termination of the tenancy. These provisions apply to tenancies of buildings erected on land of another party. Termination of the tenancy shall be deemed to occur at the expiration of the time fixed in the notice.

1. Causes for 7-day notice of termination of tenancy. Notwithstanding any other provisions of this chapter, in the event that the landlord can show, by affirmative proof, that the tenant, the tenant's family or an invitee of the tenant has caused substantial damage to the demised premises which the tenant has not repaired or caused to be repaired before the giving of the notice provided in this subsection, has caused or permitted a nuisance within the premises, has caused or permitted an invitee to cause the dwelling unit to become unfit for human habitation or has violated or permitted a violation of the law regarding the tenancy, or when the tenant is 14 days or more in arrears in payment of his rent, the tenancy may be terminated by the landlord by 7 days' notice in writing for that purpose given to the tenant, and in the event that the landlord or his agent has made at least 3 good faith efforts to serve the tenant, that service may be accomplished by leaving the notice at the tenant's last and usual place of abode. If a tenant, who is 14 days or more in arrears in payment of his rent, pays the full amount of rent due before the expiration of the 7-days' notice in writing, that notice shall be void. Payment or written assurance of payment through the general assistance program, as authorized by the State or a municipality pursuant to Title 22, chapter 1251, shall be given the same effect as payment in cash.

The only statute arguably conferring a right to terminate a lease for reason of nonpayment of rent is 14 M.R.S.A. § 6002.[6] This statute is entitled "Tenancy at will; buildings on land of another," and delineates a general thirty-day written notice requirement for termination of a tenancy at will. The plaintiffs argue that subsection 1 of this statute gives rise to a right to terminate the defendant's written lease. In pertinent part, that subsection provides:

2. Ground for termination notice. Any notice of termination issued pursuant to subsection 1 shall indicate the specific ground claimed for issuing the notice. If a ground claimed is rent arrearage of 14 days or more, the notice shall also include a statement indicating that the tenant can negate the effect of the notice of termination as it applies to rent arrearage if he pays the full amount of rent due before the expiration of the notice.

3. Breach of warranty of habitability as an affirmative defense. In an action brought by a landlord to terminate a rental agreement on the ground that the tenant is in arrears in the payment of his rent, the tenant may raise as a defense any alleged violation of the implied warranty and covenant of habitability. Upon finding that the dwelling unit is not fit for human habitation, the court shall permit the tenant either to terminate the rental agreement without prejudice or to reaffirm the rental agreement, with the court assessing against the tenant an amount equal to the reduced fair rental value of the property for the period during which rent is owed. The reduced amount of rent thus owed shall be paid on a pro rata basis, unless the parties agree otherwise, and payments shall become due at the same intervals as rent for the current rental period. The landlord may not charge the tenant for the full rental value of the property until such time as it is fit for human habitation.

1. Causes for 7-day notice of termination of tenancy. Notwithstanding any other provisions of this chapter ... when the tenant is 14 days or more in arrears in payment of his rent, the tenancy may be terminated by the landlord by 7 days' notice in writing for that purpose given to the tenant ....

If subsection 1 were applicable to all tenancies, then the lease the plaintiffs and the defendant entered has been terminated by the defendant's failure to pay the overdue rent after service of the seven-day notice to quit. Such termination would then allow a forcible entry and detainer action to be maintained under section 6001. However, a close examination of 14 M.R.S.A. § 6002, in its entirety, leads us to conclude subsection 1 is limited in scope to termination of tenancies at will. It is clear from reading the first paragraph of section 6002 that the statute is primarily directed to the notice requirements involved in terminating a tenancy at will. The first paragraph is followed by three numbered subsections, the first reducing the notice requirement from thirty to seven days upon the happening of certain specified events; the second addressing the contents of a termination notice pursuant to subsection 1; and the third providing that a breach of the warranty of habitability is an affirmative defense to an action brought by a landlord to terminate a rental agreement on the ground that the tenant is in arrears in the payment of rent. It would lead to an anomalous result to read subsection 1, which modifies the general thirty-day notice requirement contained in the first paragraph, as abrogating the common law rule that nonpayment of rent does not terminate a written lease. Subsection 1 makes no express reference to written leases. Were we to apply this subsection in the manner the plaintiffs advocate, we would be removing the subsection from its restrictive context and implying a legislative intent to change the common law. Although such change might be desirable, we will not interpret a statute as modifying the common law in the absence of clear and explicit language showing such modification or abrogation was intended. *See, e.g., Atlantic Oceanic Kampgrounds, Inc. v. Camden National Bank*, 473 A.2d 884, 886 (Me.1984); *Palmer v. Inhabitants of Town of Sumner*, 133 Me. 337, 340, 177 A. 711, 712–13 (1935). Accordingly, we hold the District Court erred by finding the lease was terminable by reason of a provision therein and otherwise according to law.[7]

The entry is:

Judgment reversed.

Remanded to the Superior Court with directions to remand to the District Court for entry of judgment denying writ of possession.

All concurring.

---

**7.** Having determined the issuance of the writ of possession was improper, we have no occasion to address the remaining issue on appeal.