STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-18-47

20 THAMES STREET LLC, et al.,

    Plaintiffs-Appellants

v.

ORDER

OCEAN STATE JOB LOT OF MAINE LLC,

    Defendant-Appellee

STATE OF MAINE
Cumberland ss Clerk's Office

JUN 20 2019 8:08AM

RECEIVED

Before the court is an appeal by 20 Thames Street LLC and 122 PTIP LLC (collectively, "Thames Street") from decisions of the Business and Consumer Court (Mulhern, J.) granting judgment for Ocean State Job Lot of Maine LLC ("Ocean State") on Thames Street's action for forcible entry and detainer and awarding attorney's fees and costs of $216, 651.06 to Ocean State.

Procedural History

According to the docket sheet, Thames Street filed a complaint for forcible entry and detainer in the District Court on May 8, 2018. The action was accepted for transfer to the Business and Consumer Court, based on an application by Ocean State, on May 23, 2018.[1]

A hearing on the FED complaint was thereafter held by the Business and Consumer Court, sitting as the District Court, on June 27 and 28 and July 16, 2018.

On August 14, 2018, after post-trial briefing, the court granted judgment for Ocean State. The effect of that judgment was to deny Thames Street possession of commercial retail space leased by Ocean State at a shopping center located at 251 U.S. Route 1 in

---

[1] Formal transfer to the Business and Consumer Court occurred on May 24, 2018.

Falmouth. The August 14 judgment included findings of fact and also concluded that Ocean State was entitled to attorney's fees and costs pursuant to the lease and could therefore file a petition for an attorney's fee award.

Thames Street thereafter filed a timely motion for additional findings of fact and amendment of the judgment,[2] and Ocean State filed a petition for its attorney's fees and costs. In an order dated September 20, 2019 and docketed the following day, the court denied the motion by Thames Street for additional findings of fact and amendment of the judgment and simultaneously awarded Ocean State $206,076.00 in attorney's fees and $10,575.06 in costs.

On October 10, 2018 Thames Street filed notices of appeal to both the Superior Court and to the Law Court from the Business Court's August 14 and September 10 orders. The Law Court thereafter issued an order concluding that appeals in FED proceedings are governed by the 14 M.R.S. § 6008(1), which provides for appeals to the Superior Court. It therefore dismissed Thames Street's appeal to the Law Court for lack of jurisdiction, allowing this appeal to proceed and leading to the unusual circumstance that the Superior Court is hearing an appeal from the Business and Consumer Court.

Standard of Review

On its appeal from the FED decision, Thames Street did not seek a jury trial de novo pursuant to M.R.Civ.P 80D(f)(2).[3] This appeal is therefore on questions of law pursuant to M.R.Civ.P. 80D(f)(1).

The trial court's rulings on issues of law are reviewable de novo, and the trial court's findings of fact may only be set aside if they are clearly erroneous. *See* M.R.Civ.P. 76D. A factual finding is clearly erroneous (1) if there is no competent evidence in the record to support it, (2) if the fact-finder clearly misapprehended the meaning of the

---

[2] Pursuant to M.R.Civ.P. 76D, that motion had the effect of staying the time for filing any appeal.

[3] Section 40 of the Lease provides that both Tenant and Landlord waived any right to trial by jury.

2

evidence, or (3) if the force and effect of the evidence taken as a whole rationally persuades the appellate court "to a certainty" that the finding is "so against the great preponderance of the believable evidence that it does not represent the truth and right of the case." *Wells v. Powers,* 2005 ME 62 ¶ 2, 873 A.2d 361.

An appellate court will not substitute its judgment as to the weight or credibility of the evidence if there is evidentiary support in the record for the trial court's findings, *State v. Connor,* 2009 ME 91 ¶ 9, 977 A.2d 1003.

Facts

The basis of Thames Street's claim that it was entitled to possession of the premises was its contention that Ocean State had breached its lease by failing to provide an estoppel certificate pursuant to Section 29 of the lease within the required 10 day period. On that issue the trial court found as follows:

The lease in question had been entered into between Ocean Street and the former owner of the shopping center on August 3, 2017. It provided for an initial 10-year term with three renewal options of five years each. On March 23, 2018 Thames Street purchased the shopping center and on that date Patricia Dugas, acting on behalf of Thames Street,[4] notified Ocean State that its lease had been assigned to Thames Street.

On April 10, 2018 Ms. Dugas sent an overnight letter to Ocean State enclosing a proposed Estoppel Certificate and a proposed Subordination, Non-Disturbance and Attornment Agreement. A copy of that letter was sent to Ocean State's Rhode Island attorney, Andrew Sholes. Ms. Dugas's letter requested that Ocean State "promptly execute, *notarize,* and return these documents within 10 days in accordance with Sections 27 and 29 of the Lease" (italics in original).

---

[4] Dugas worked for Commercial Properties Management, which had been retained by Thames Street to manage the shopping center.

3

This case turns on the interpretation of Section 29 of the Lease and the actions taken by the parties with respect to that provision.[5] Section 29 reads as follows:

> **Estoppel Certificates.** Each party agrees, from time to time, within 10 days after request of the requesting party, to execute and deliver to the requesting party, or the requesting party's designee, any estoppel certificate requested by the other, stating, if true, that this Lease is in full force and effect, the date to which rent has been paid, that the requesting party is not in default hereunder (or specifying in detail the nature of the requesting party's default), the termination date of this Lease and such other matters pertaining to this Lease as may be reasonably requested by the requesting party. Each party's obligation to furnish such estoppel certificate in a timely fashion is a material inducement for each party's execution of the Lease. No cure or grace period provided in this Lease shall apply to each party's obligations to timely deliver an estoppel certificate.

Estoppel certificates are intended to bind the signatory to the statements made and preclude them from claiming the contrary at a later time. *See, e.g.,* Black's Law Dictionary 495 (5th Ed. 1990). Estoppel certificates are generally included in commercial leases to allow the parties to those leases to satisfy third parties, such as their lenders or prospective purchasers, as to the status of the lease and the absence of any pending issues under the lease.

---

[5] Section 27, the other contractual provision referred to in Ms. Dugas's April 10 letter, provides that the tenant shall on demand execute, acknowledge, and deliver a subordination, non-disturbance and attornment agreement (referred to in the lease as an SNDA) for the benefit of the holder of a first mortgage on the shopping center. The notarization request in Ms. Dugas's April 10 letter presumably refers to the SNDA because of the requirement that SNDAs be acknowledged. There is no deadline set forth in the lease for the tenant's delivery of an executed SNDA. In a Notice of Default and Termination dated April 25, 2018 and in its FED complaint Thames Street raised a claim that Ocean State had failed to deliver an executed SNDA, but Thames Street did not pursue that argument at the FED hearing. In fact, the record shows that Ocean Street had sent Thames Street an executed and notarized SNDA on April 26, 2018, prior to the filing of Thames Street's FED complaint.

4

The estoppel certificate requested by Thames Street that accompanied Ms. Dugas's April 10 letter did not simply include statements that the Lease was in full force and effect and that the landlord was not in default, along with the amount of rent and the termination date of the Lease. Instead it sought declarations from Ocean State with respect to various additional subjects and comprised a total of 21 numbered paragraphs.

The trial court found that at least three of the statements contained in the estoppel certificate that Ocean State was asked to sign were factually untrue. Among other things, the trial court found that the estoppel certificate requested by Thames Street incorrectly stated that the lease had not been amended and that there had been no sublets.

The trial court also found that three of the statements in the estoppel certificate that Thames Street was seeking were not reasonable requests. Specifically, the requested estoppel certificate stated that all of the work to be performed by the landlord had been performed and that there were no defaults on the part of the landlord – even though there continued to be a pending dispute with respect to roof repairs that Ocean State contended that the prior landlord had been required to perform when the lease began.

In addition, the estoppel certificate requested by Thames Street also stated that Ocean State "understands and acknowledges" certain details relating to Thames Street's relationship with KeyBank and Ocean Street's obligations to KeyBank in the event that Thames Street defaulted on its KeyBank loan. The trial court found this request to be unreasonable because Ocean Street did not have any knowledge of the KeyBank relationship and because the Lease did address any obligations that Ocean Street might have to KeyBank or any of the landlord's lenders.

5

On appeal Thames Street does not dispute that there is evidence to support the trial court's findings that the estoppel certificate requested by Thames Street contained statements that were not true and other statements that were not reasonable for Thames Street to request. *See* Thames Street Reply Brief at 2.

On April 17, 2018, six days after Ocean Street received Ms. Dugas's letter requesting the estoppel certificate, Patricia Rose, Ocean State's real estate administration manager, attempted to call Ms. Dugas, and the two spoke on the phone the following day about Thames Street's request for the estoppel certificate and about a pending request that Ocean State had made for a memorandum of lease which the landlord was obligated to provide under Section 38(e) of the Lease.[6] Although there is a dispute about the statements made during that conversation, the trial court found that Ms. Rose did not refuse to provide the estoppel certificate and told Ms. Dugas to contact Attorney Sholes. The trial court also found that Ms. Dugas told Ms. Rose that she or Thames Street's attorney would follow up with Attorney Sholes.

On this appeal Thames Street challenges certain of those findings, but there is record evidence supporting the findings in question (with citations to the trial testimony in the trial court's judgment), and those findings are not clearly erroneous. The trial court, as

---

[6] Section 38(e) of the Lease provides, "Neither this Lease nor a notice of lease shall be filed by or on behalf of Tenant in any public record, except that either party may prepare and file a memorandum of lease in form mutually satisfactory. If requested by a party, the non-requesting party shall execute and deliver said memorandum of lease and the Tenant shall simultaneously execute a termination of said memorandum of lease to be delivered to and held in escrow by Landlord's counsel pending termination or expiration of this Lease."

the trier of fact, was entitled to weigh the testimony of the witnesses and determine the facts.[7]

There is no dispute that, notwithstanding Ms. Dugas's statement and Ms. Rose's understanding that Thames Street would reach out to Attorney Sholes, it did not do so. Instead, an attorney for Thames Street sent a "Notice of Default and Termination" to Ocean Street on April 25, raising various alleged defaults by Ocean Street including a failure to furnish the estoppel certificate within 10 days. Although Ocean State responded on April 26 by denying that it was in default and sending a different estoppel certificate that Ocean State had drafted,[8] Thames Street proceeded to file its FED complaint on May 8.

On appeal Thames Street argues that Ocean Street did not put Thames Street on notice of its specific objections to the estoppel certificate that Thames Street had requested. It further suggests that even if Thames Street had followed up on the May 18 phone conversation between Ms. Dugas and Ms. Rose by calling Attorney Sholes, those issues would not have been raised. However, Attorney Sholes testified to the contrary at the FED hearing. June 28, 2018 Tr. 175-76. In addition, the trial court implicitly credited Sholes's testimony in observing that, if Thames Street had followed up with Sholes as requested by Ms. Rose in the May 18 telephone conversation, there was "little doubt" that the problems with the estoppel certificate could have been resolved.

---

[7] The short answer to Thames Street's argument that Ocean Street committed an anticipatory breach of the lease by refusing to provide the estoppel certificate unless Thames Street first provided a memorandum of lease is that the trial court expressly found that Ms. Rose did not refuse to provide an estoppel certificate.

[8] The manager of Thames Street, Jonathan Cohen, testified that the estoppel certificate drafted by Ocean Street was unacceptable to Thames Street.

7

In its subsequent decision awarding attorney's fees, the trial court commented as follows:

> There was credible evidence at trial that Plaintiffs attempted to use a hyper technical interpretation of the lease to try to evict Defendant because Plaintiffs did not like the terms of the lease they had assumed (derided as a 'tenants' lease by Mr. Cohen) when they purchased the shopping center.

The trial court added that Thames Street "almost immediately served a notice of termination and filed the FED action instead of reasonably trying to resolve the issue with [Ocean State]."

## Interpretation of Section 29

At the outset, Thames Street did not argue in the trial court that Section 29 was ambiguous. The trial court did not find any ambiguity in the contractual language, and neither party argues on appeal that the relevant language is ambiguous. Accordingly, the interpretation of Section 29 is a question of law. *Richardson v. Winthrop School District,* 2009 ME 109 ¶ 9, 983 A.2d 400.

Thames Street's primary argument is that the trial court was incorrect as a matter of law in interpreting Section 29. Specifically, it contests the trial court's ruling that because the estoppel certificate which Ocean State was supposed to sign contained untrue statements and statements that were unreasonable for Thames Street to request, Ocean State was excused from delivering the estoppel certificate within the 10 day deadline.

The operative language in Section 29 is that a party requested to provide an estoppel certificate shall execute and deliver the requested certificate "stating, *if true,* that this Lease is in full force and effect, the date to which rent has been paid, that the

8

requesting party is not in default hereunder (or specifying in detail the nature of the requesting party's default), the termination date of this Lease and such other matters pertaining to this Lease as may be *reasonably requested* by the requesting party" (emphasis added).

There does not appear to be any dispute that the qualifiers that an estoppel certificate should include certain statements "if true" and statements as to other matters "as may be reasonably requested" meant that Ocean State was not required to execute and deliver an estoppel certificate with statements that were not true and statements that Thames Street could not reasonably have requested. Given the trial court's findings, Ocean State therefore had no obligation to execute and return the specific estoppel certificate that had been requested by Thames Street.

The remaining question is whether Ocean Street was nevertheless required under Section 29 to return a different estoppel certificate – one that contradicted or omitted the statements that Thames Street was requesting and that would have been unacceptable to Thames Street – within 10 days. The court concludes that this was not required under Section 29 for three reasons.

First, as the trial court found, the 10 day time limit was an insufficient time period to allow Ocean State to do anything other than either to sign and return the requested estoppel certificate – if the statements in the requested certificate had been true and if the requests had been reasonable – or to decline to do so. Thames Street argues that there is no factual support for that finding. However, Thames Street's own manager, Jonathan Cohen, agreed during his testimony that the 10 day time limit in Section 29 was "an unreasonably tight provision."

9

Second, interpreting the 10-day time limit in Section 29 as requiring Ocean State to provide a different estoppel certificate than the one requested (a certificate that would have been unacceptable to Thames Street) would not have fulfilled one of the primary purposes of the estoppel certificate provision – to allow Thames Street to satisfy its lenders that there were no existing problems with the Ocean State lease.

Finally, the interpretation offered by Thames Street would require Ocean State either (1) to deliver an estoppel certificate within 10 days even though the specific estoppel certificate requested included statements that were not true and statements that could not reasonably have been requested or (2) to face a termination of the lease and loss of the leased premises. This would turn Section 29 into a forfeiture provision. Under Maine law, forfeiture provisions in a lease are to be strictly construed against the party seeking enforcement, and enforcement of forfeiture provisions is not favored. *Rubin v. Josephson,* 478 A.2d 665, 669 (Me. 1984). Accordingly, the trial court's decision that Section 29 should be strictly construed against forfeiture was not erroneous as a matter of law.

To the extent that Section 29 should be interpreted to require Ocean State to have taken some action within 10 days if it was not able to execute and deliver the estoppel certificate requested by Thames Street, the trial court found that Ocean State had met that requirement. Specifically, it found that Ocean State had met its obligation because Ms. Rose had called Ms. Dugas and had requested her to call Attorney Sholes and because Ms. Dugas had responded that she or an attorney for Thames Street would follow up with Sholes. The trial court found that as a result, Sholes understood that he would receive a phone call to discuss both the memorandum of lease that had been requested by Ocean State and the estoppel certificate that was being requested by Thames Street.

10

Thereafter, in the trial court's words, Thames Street "dropped the ball" by not following up with Sholes and therefore cannot contend that Ocean State was responsible for the failure to resolve the estoppel certificate issue within the 10 day time limit. On appeal Thames Street takes issue with the trial court's findings but as noted above, those findings were not clearly erroneous.

Accordingly, the trial court's decision granting judgment in the FED proceeding to Ocean State and denying Thames Street possession of the leased premises is affirmed.


Attorney's Fees and Costs

As a second issue on this appeal, Thames Street challenges the trial court's award of attorney's fees and costs totaling $216,651.06 pursuant to Section 38(m) of the Lease. That section provides:

> In the event either party initiates litigation to enforce the terms and provisions of this Lease, the non-prevailing party in such action shall reimburse the prevailing party for its reasonable attorney's fees, filing fee, and court costs.

Thames Street raises three arguments. The first is that the trial court was not authorized, in a forcible entry and detainer action, to decide anything beyond the issue of whether Thames Street was entitled to immediate possession of the premises. The second is that the FED action was not litigation "to enforce the terms and provisions of the Lease" within the meaning of Section 38(m). The third is that the trial court abused its discretion in awarding $206,076 in attorney's fees – an amount which Thames Street contends was excessive for a case involving a three-day FED hearing and no discovery.

11

On the issue of the trial court's authority to award attorney's fees under the lease, the Law Court has reiterated on numerous occasions that a forcible entry and detainer action is a summary proceeding to determine "the single issue" of who is entitled to immediate possession of the premises. *Tozier v. Tozier,* 437 A.2d 645, 647 (Me. 1981). *Accord, Bureau v. Gendron,* 2001 ME 157 ¶9 , 783 A.2d 643; *Frost Vacationland Properties, Inc. v. Palmer,* 1999 ME 15 ¶ 8 , 723 A.2d 418; *Foster v. Bloomberg,* 657 A.2d 327, 329 (Me. 1995). *See also* M.R.Civ.P. 80D(g)(forcible entry and detainer actions shall not be joined with any other action, nor shall defendant in such an action file any counterclaim).

The Law Court has stated that the judicial power in a forcible entry and detainer action is purely statutory in origin. *Rubin v. Josephson,* 478 A.2d at 667. In the case of commercial leases, in addition to determining the right to immediate possession, the court has expressly been given "jurisdiction to hear, decide, and award rent and arrears allegedly owing . . . . " 14 M.R.S. § 6017(6). No specific additional jurisdiction, however, has been granted to enforce a lease provision providing for an award of attorney's fees to prevailing parties.

Ocean State points out that Thames Street's argument that the trial court lacked the authority to award attorney's fees is being raised or the first time on appeal. Whether Thames Street has waived the argument by not raising it below depends on whether the limitation on trial court authority in FED actions is a matter of subject matter jurisdiction. An absence of subject matter jurisdiction can be raised at any time, including on appeal. *Landmark Realty v. Leasure,* 2004 ME 85 ¶ 6, 853 A.2d 749. Subject matter jurisdiction may also be raised sua sponte by an appellate court. *Ewing v. Maine District Court,* 2009 ME 16 ¶ 12, 964 A.2d 644.

12

The court concludes that the absence of authority to award attorney's fees under the lease is a matter of subject matter jurisdiction. This follows from the Law Court's decision in *Tozier*. In that case the Law Court expressly noted that "the only issue" raised by the plaintiff-appellant was whether the evidence at trial was sufficient to sustain the finding that defendant was entitled to possession. 437 A.2d at 646. The Court affirmed the trial court below on that issue. However, it then went on to rule that the trial court had erroneously gone beyond the issue of possession to enter judgment that the defendant had title to the land in dispute. *Id.* at 649. Even though the issue had not been raised on appeal, the Law Court modified the judgment below to eliminate the finding that defendant had title to the property.

Because the Law Court in *Tozier* modified the judgment below on its own motion, it follows that the limitation on a trial court's authority in forcible entry and detainer cases is jurisdictional. Moreover, when the legislature authorized District Courts to award rent and arrears in commercial FED actions, it did so by expressly granting them "jurisdiction" to do so. 14 M.R.S. § 6017(6). This statutory language supports the conclusion that the limitations on a court's authority in FED actions go to the court's subject matter jurisdiction.

Accordingly, the Business Court, sitting as the District Court in an action for forcible entry and detainer, did not have authority to award attorney's fees pursuant to Section 38(m) of the Lease. The court therefore does not reach Thames Street's other arguments that Section 38(m) of the lease was inapplicable or that the $206,076.00 awarded in attorney's fees was exorbitant.

13

The absence of subject matter jurisdiction over an attorney's fee claim under the lease does not affect the trial court's award of costs. Section 1501 of Title 14 provides that "in all actions" the prevailing party recovers costs unless specially provided, and Thames Street has conceded that costs may be awarded. Reply Brief at 9.

The entry shall be:

1. The judgment below granting judgment to defendant-appellee Ocean State Job Lot of Maine LLC in the action for forcible entry and detainer brought by plaintiffs-appellants 20 Thames Street LLC and 122 PTIP LLC is affirmed.

2. The award of costs to Ocean State in the amount of $10,575.06 is affirmed.

3. The award of attorney's fees of $206,076.00 to Ocean State is vacated.

4. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: June 20, 2019

Thomas D. Warren
Justice, Superior Court

Entered on the Docket: 06/21/19
mc/

**Plaintiffs–Glenn Israel, Esq.**
**Defendant–Seth Brewster, Esq.**

14